*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KEVIN JAMAL LANG,

        Defendant-Appellant.

UNPUBLISHED
June 20, 2019

No. 338359
Wayne Circuit Court
LC No. 16-010785-01-FC

Before: BECKERING, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of first-degree home invasion, MCL 750.110a(2), and domestic violence, MCL 750.81(2). The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to 108 months to 40 years in prison for the home invasion conviction, and time served (90 days) for the domestic violence conviction. We affirm.

Defendant was convicted of assaulting his former girlfriend after entering her home, without permission, at approximately 6:30 a.m. on November 19, 2016. The complainant and defendant had been intermittently involved in a long-term relationship, to the disapproval of her mother and her mother's live-in boyfriend, Richard Davis. The complainant had lived with defendant as recently as October 2016, before returning to her mother's home, but had continued an intimate relationship with defendant until at least November 2, 2016. The prosecution presented the complainant's testimony that on the morning of November 19, while her mother and Davis were not home, she responded to a knock on the door, wearing only her underwear and a blanket. The person outside identified himself as a neighbor. After the complainant cracked open the door, defendant pushed his way inside. Thereafter, defendant refused to leave until the two of them talked, and then became upset when the complainant received a call from a new boyfriend. The complainant testified that defendant then physically and sexually assaulted her. When Davis later arrived at the house, defendant fled the house and Davis chased after him. Davis returned to the house and called the police. Defendant also returned to the house, demanding the return of certain personal items. Defendant also called the police. At trial, defendant testified on his own behalf and claimed that he and the complainant had agreed that he

would come to the house that morning after her mother and Davis left. He claimed that after the complainant let him in the house, they engaged in consensual sex. He admitted physically assaulting the complainant as they argued about her receiving a phone call from another man. The trial court found defendant guilty of first-degree home invasion and domestic violence, but acquitted him of three additional charges of first-degree criminal sexual conduct (CSC-I), MCL 750.520b.

## I. EFFECTIVE ASSISTANCE

Defendant first argues that he was denied the effective assistance of counsel at trial. We disagree.

The effective assistance of counsel is presumed, and the burden is on the defendant to establish otherwise. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002); *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.

## A. BACKGROUND

The crux of this issue is trial counsel's handling of evidence concerning a 911 call, and reference to the alleged contents of this call in the trial court's findings of fact. In total, four 911 calls were made, three by defendant reporting that Davis had attacked him and that he needed to retrieve his personal items from inside the house, and one call—the call at issue—by Davis reporting the criminal activity that led to defendant being charged in this case. Davis's call was not played at trial or introduced as evidence. However, this Court granted defendant's motion to remand for a *Ginther*[1] hearing to allow defendant to develop an evidentiary record related to this call in support of his ineffective-assistance claim.[2] Of relevance, the 911 call made by Davis includes the following exchange:

> *Operator*: Did he force his way in or anything, or was there a crime committed?
>
> *Davis*: I don't know the whole story yet.
>
> *Operator*: Does she have an issue with him being there?
>
> [inaudible background voice]

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Lang*, unpublished order of the Court of Appeals, issued February 14, 2018 (Docket No. 338359).

*Davis*: Yes, he forced his way in here.

During trial, the complainant testified that she never called 911. Davis testified that after returning to the house and locking the door, he called the police. He denied that the complainant had asked him to call. Officer Charles Cobble, the responding police officer, subsequently testified. Of significance, when asked about the nature of the police run, the officer testified that dispatch had informed him that it had received two 911 calls; one from a female and one from by a male. The following exchange occurred during the prosecutor's direct examination of Officer Cobble:

*Q*. Okay. And what was the nature of the run?

*A*. Originally we received a call, according to our dispatch, two 911 calls. One from a male half, *one from a female half*.

The male half stated that he was attacked by the female half's father and he wanted to get his phone back. And then the male half was—male, *female I want to call them suspect victim.*

*Q*. Okay. So there were 911 calls. Were you able to hear those yourself?

*A*. No, ma'am.

\* \* \*

*Q*. And then there—were you about to say as far as the other purpose of your run there was a nature of a call which was what?

*A*. The female caller had stated that—

*Trial counsel*: Objection to what the female caller said.

*The prosecutor*: Okay. Well he already stated, we've had about two minutes of testimony of him stating the nature of the run regarding the defendant.

So I'm asking what was the other nature—the nature of the run regarding the other party. It's his understanding as to why he was going there.

*A*. Okay. Dispatch has stated that *the female half was reporting a dispute with her ex-boyfriend and that he had kicked in the front door*. [Emphasis added.]

During trial counsel's cross-examination, the following exchange occurred about the 911 call:

*Q*. And your dispatch told you they had a female caller, they didn't—you don't know whether a female actually called?

That was just what dispatch had told you it was about a female or it was a female caller?

*A.* They stated it was a female caller that called as well.

After trial counsel concluded her cross-examination of the officer, the trial court inquired:

> *Q.* I'm sorry. I did have one question. You said that the female caller said that there is a dispute between who and then that person kicked the front door?
>
> *A.* Her and her ex-boyfriend.

At the conclusion of trial, when issuing its findings of fact, the trial court referred to the 911 call and its contents as relayed by Officer Cobble:

> Next Officer Charles Cobble testified . . . The dispatch referred to two different runs. One was for a man who said that he was attacked by the girlfriend's father, which this Court finds was the defendant making the cell phone calls, and *a female caller saying that there was a dispute with an ex-boyfriend and that he had kicked in the front door. Based on what I've heard, I find that the female caller was the complainant.* [Emphasis added.]

In finding that defendant committed the offense of first-degree home invasion, the trial court stated:

> Moreover, Officer Charles Cobble testified that she was extremely upset, she was crying and bleeding. This characterization is—these characterizations are very inconsistent with at least the defendant's characterization of the condition of the complainant and far more consistent with a violent assault and a home invasion. *And of particular importance also is the fact that when the police arrived, the complainant immediately notified the police that her ex-boyfriend had kicked in the front door.* [Emphasis added.]

## B. INADMISSIBLE HEARSAY AND RIGHT OF CONFRONTATION

Defendant complains that trial counsel was ineffective for not objecting to hearsay testimony regarding the 911 call, which defendant contends also violated his constitutional right of confrontation. We disagree.

Hearsay, which is a statement other than one made by the declarant while testifying at the trial or hearing and is offered to prove the truth of the matter asserted, is inadmissible at trial unless there is a specific exception allowing its introduction. See MRE 801(c); MRE 802. "The Confrontation Clause prohibits the admission of all out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination." *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007). "However, the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 10-11. "[A] statement offered to show the effect of the out-of-court statement on the hearer does not violate the Confrontation Clause." *Id.* at 11. "Specifically, a statement offered to show why police officers acted as they did is not hearsay." *Id.*

-4-

Officer Cobble's testimony regarding what the dispatcher relayed to him about the statements of a "female caller" was offered for the nonhearsay purpose of explaining his understanding of the nature of the calls to which he was responding. He expressly confirmed that he did not personally hear the actual 911 calls. Further, the complainant testified that she did not make a 911 call because there was no landline in the home and defendant had her two cell phones. She testified that Davis called the police and Davis also testified that he did, in fact, make the 911 call at issue. Although the trial court mentioned Officer Cobble's testimony in its findings of fact and misapprehended the evidence, noting that the complainant made the 911 call, we conclude that there is no reasonable probability that the result of the proceedings, i.e., defendant's conviction of first-degree home invasion, would have been different had defense counsel objected on hearsay and confrontation grounds to Officer Cobble's testimony in this regard. Again, Officer Cobble testified that he had no personal knowledge as to who called 911, their gender, or what was said; he did not personally hear the calls. The complainant clearly testified that she did not call 911 and Davis testified that he was the person who called 911. In reaching its decision, the trial court noted as particularly important the fact that, when the police arrived, the complainant immediately notified them that defendant had kicked in the front door. The trial court found the complainant's version of the incident to be supported by her demeanor immediately following the incident—she was extremely upset, crying, and bloodied—consistent with the police run. That the 911 call came from Davis rather than complainant is a distinction without a difference in this situation where Davis was effectively calling on behalf of the complainant and the testimony was clear by first-hand accounts as to who made the call. This matter was also addressed during the *Ginther* hearing ordered by this Court and the trial court denied defendant's motion for a new trial, finding neither ineffective assistance of counsel nor prejudice. We agree with the trial court's conclusions.

## C. FAILURE TO OBTAIN OR INTRODUCE THE RECORDING OF THE 911 CALL

Defendant also argues that trial counsel was ineffective for failing to investigate and obtain the recording of the 911 call before trial, and for not introducing this evidence at trial. We disagree.

Decisions regarding what evidence to present are presumed to be matters of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "Counsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (quotation marks and citation omitted).

In this case, to the extent that defense counsel could be deemed ineffective for failing to investigate and obtain a copy of the 911 call initiated by Davis in order to recognize and make clear during Officer Cobble's testimony that Davis, not the complainant, initiated the 911 call, we conclude for the reasons discussed above that there was no prejudice. In other words, defendant's defense was not prejudiced by trial counsel's failure to investigate or obtain the 911 call.

Further, Davis called 911 for police assistance, reporting that he had thrown defendant out of his house. Defendant has not persuasively explained how this evidence would have done anything other than harm the defense. Surely, Davis calling the police because defendant had

been in his house would not have provided defendant any particular defense to the charges against him. Consequently, defendant has also failed to demonstrate that trial counsel's failure to introduce into evidence Davis's 911 call was objectively unreasonable.

## II. GREAT WEIGHT OF THE EVIDENCE

Defendant also argues the verdict finding him guilty of first-degree home invasion is against the great weight of the evidence, and accordingly, he is entitled to a new trial on this basis as well. We disagree.

A new trial may be granted if a verdict is against the great weight of the evidence. MCR 2.611(A)(1)(e). In evaluating whether a verdict is against the great weight of the evidence, the question is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v Lemmon*, 456 Mich 625, 627; 576 NW2d 129 (1998); *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). When a challenge to the great weight of the evidence follows a bench trial, this Court examines the trial court's findings for clear error. MCR 2.613(C); *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 651-652; 662 NW2d 424 (2003). A factual finding is clearly erroneous if the appellate court is "left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). However, this Court gives special deference to the trial court's findings when those findings are based on witness credibility. MCR 2.613(C).

The elements of first-degree home invasion are: (1) the defendant broke and entered a dwelling or entered the dwelling without permission; (2) when the defendant did so, he intended to commit a felony, larceny, or assault, or he actually committed a felony, larceny, or assault while entering, being present in, or exiting the dwelling; and (3) another person was lawfully present in the dwelling or the defendant was armed with a dangerous weapon. *People v Sands*, 261 Mich App 158, 162; 680 NW2d 500 (2004); see also MCL 750.110a(2). Considering the complainant's testimony that, after hearing a knock on the door and a voice she did not recognize saying her "neighbor" was outside, leading her to crack the door open one or two inches, following which defendant forced his way inside the house and then admittedly physically assaulted her, the evidence does not preponderate so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. Defendant's great-weight arguments essentially consist of an attack on the complainant's credibility and the trial court's findings in that regard. Defendant attempts to use Davis's 911 call to support his great-weight argument, but as plaintiff aptly observes, defendant's reliance on that recording is misplaced because it was not a part of the trial record. The trial court's verdict is not against the great weight of the evidence.

## III. SCORING OF OV 4

In his next claim, defendant argues that the trial court erroneously scored offense variable (OV) 4 of the sentencing guidelines. Again, we disagree.

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People*

*v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

OV 4 addresses psychological injury to a victim. MCL 777.34(1). The trial court is required to score 10 points for OV 4 if a "serious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The statute does not require that the victim actually receive professional treatment in order to assess 10 points. MCL 777.34(2). However, a victim's expression of fearfulness during the commission of a crime "by itself and without any other showing of psychological harm" is not sufficient to justify assessing 10 points for OV 4. *People v White*, 501 Mich 160, 164; 905 NW2d 228 (2017). Moreover, "a court cannot merely assume that a victim has suffered a 'serious psychological injury' solely because of the characteristics of the crime." *Id*. at 165. However, the trial court may assess 10 points for OV 4 when the injury caused by the crime continues after the completion of the crime itself. See *People v Wellman*, 320 Mich App 603, 611-612; 910 NW2d 304 (2017).

As detailed in the lower court record and observed by the trial court, the complainant testified that defendant forced his way into the home, put his hands over her mouth to stop her from screaming, and dragged her into her bedroom as she attempted to stop him. The trial court's observation that these events are characteristic of circumstances that "may require future professional treatment" is insufficient by itself to support a 10-point score for OV 4. But in a victim impact statement, which is prepared for sentencing a defendant for his convictions, the complainant stated that she was "receiving ongoing therapy sessions[.]" This statement,[3] coupled with the facts of the case, provided a reasonable basis for the trial court to conclude that the complainant actually suffered a serious psychological injury requiring professional treatment as a result of the crime.

Defendant argues that the victim's impact statement did not directly indicate that her ongoing therapy was specifically related to the offenses for which he was convicted. However, the fact that this information was reported in the victim's impact statement, the purpose of which is to address the impact of an offense on a victim, supports that the complainant was relating her ongoing therapy sessions to this offense. Moreover, the complainant also expressed in the statement her views regarding defendant receiving a prison sentence and her request to be notified when he is released, which further supports that the exchange between the probation officer and the complainant was related to defendant's sentencing for this offense.

Accordingly, the trial court did not clearly err by finding that the 10-point score was warranted for OV 4. See *Hardy*, 494 Mich at 438.

---

[3] "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR . . . ." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). It may also properly rely on inferences that arise from the record evidence when making the findings underlying its scoring of offense variables. *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012).

## IV.  DEFENDANT'S STANDARD 4 BRIEF

In a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant raises additional issues of prosecutorial misconduct, sufficiency of the evidence, and the validity of his waiver of counsel at the preliminary examination.  We conclude that defendant is not entitled to a new trial on basis of any of these issues.

## A.  SELF-REPRESENTATION AT THE PRELIMINARY EXAMINATION

To properly preserve an issue for appeal, a defendant must timely object in the trial court, even if the right asserted is constitutional in nature.  *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999).  Defendant did not challenge the validity of his waiver of counsel at the preliminary examination or in an appropriate motion in the trial court after he was bound over for trial, leaving this issue unpreserved.  We therefore review this unpreserved constitutional claim for plain error affecting defendant's substantial rights.  See *id.* at 762-763.

The Sixth Amendment of the United States Constitution explicitly guarantees a defendant in a criminal case the right to the assistance of counsel and implicitly guarantees the right of self-representation.  US Const, Am VI; *Faretta v California*, 422 US 806, 818-832; 95 S Ct 2525; 45 L Ed 2d 562 (1975).  Any waiver of the right to counsel must be knowingly, voluntarily, and intelligently made by the defendant.  *People v Russell*, 471 Mich 182, 188; 684 NW2d 745 (2004).  Courts make every presumption against the waiver.  *Id*.  A trial court's factual findings surrounding a waiver are reviewed for clear error.  *Id*. at 187.

When confronted with a defendant's initial request for self-representation, a trial court must determine, under standards established in *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976), that

> (1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business.  [*Russell*, 471 Mich at 190.]

A trial court must also satisfy the requirements of MCR 6.005(D).  *Id*.  This court rule provides that a court may not permit the defendant's initial waiver of the right to counsel without:

> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.  [MCR 6.005(D).]

But a trial court need not follow a "litany approach" to establish compliance with the requirements of *Anderson* and MCR 6.005(D).  See *Russell*, 471 Mich at 191.  It is sufficient that

the court substantially comply with the substantive requirements. *Id*. "The nonformalistic nature of a substantial compliance rule affords the protection of a strict compliance rule with far less of the problems associated with requiring courts to engage in a word-for-word litany approach." *People v Adkins (After Remand)*, 452 Mich 702, 727; 551 NW2d 108 (1996), overruled in part on other grounds in *People v Williams*, 470 Mich 634, 641 n 7; 683 NW2d 597 (2004). While the trial court must be certain that the requirements for a proper waiver are met, superficial irregularities will not give rise to an "appellate parachute." *Russell*, 471 Mich at 192.

This case involves defendant's self-representation only at the preliminary examination. With regard to the first requirement established by *Anderson*, 398 Mich at 367, defendant's affirmations at the outset and during the hearing establish that he made an unequivocal request for self-representation. At the outset, defendant informed the district court that "I would like to represent myself today. I don't want my attorney." During the hearing, after the court addressed defendant about making improper arguments while questioning the witness, it again asked defendant if he wanted to represent himself. In response to the court's direct question, defendant responded: "Yes." On this record, there is no question that defendant's request for self-representation was unequivocal.

While the district court did not engage in an explicit colloquy with defendant to advise him of the dangers and disadvantages of self-representation, it did caution him that he was facing some "very serious charges," and defendant responded, "Yes." Also, the court instructed defendant about his improper questions throughout his cross-examination of the witness, and again asked him if he wanted to represent himself. Defendant affirmed his decision to proceed without counsel, and it is clear from the record that defendant wanted to represent himself at the preliminary examination, although he had standby counsel. The district court was not required to pressure defendant into relinquishing his right to waive counsel. See *People v Morton*, 175 Mich App 1, 7; 437 NW2d 284 (1989). Because defendant reaffirmed his intention to represent himself after being warned that he would be expected to follow applicable rules of evidence, the record clearly establishes a knowing, intelligent, and voluntary assertion of the right to self-representation. Substantial compliance with the second *Anderson* requirement was satisfied.

We reach this same conclusion with respect to the third *Anderson* requirement, even though the district court did not make an express determination that defendant would not disrupt, unduly inconvenience, or burden the court and the administration of the court's business. Although the potential for undue disruptions existed because of defendant's lack of legal training, the record clearly establishes that the court adequately accounted for this factor by requiring defendant to comply with the rules and procedures of the court, specifically by instructing defendant on more than one occasion that he would have to stay within the proper parameters when questioning the witness, i.e., asking relevant questions and not making arguments.

The district court also complied with MCR 6.005(D)(2) by offering defendant the opportunity to consult with his appointed lawyer, which defendant accepted. Defendant remained assisted by standby counsel throughout the proceeding, although he did not appear to seek any guidance from standby counsel. As defendant observes, however, the court made no attempt to advise him of the charges against him and the maximum possible prison sentence, as required by MCR 6.005(D)(1). The mere fact that a judge does not discuss the charges and

possible penalties with a defendant is not enough to defeat a finding of substantial compliance with the waiver procedures. *Adkins (After Remand)*, 452 Mich at 731. In this case, the court simply stated that defendant was facing "very serious charges." The charges in the information and the possible penalties were not read at the preliminary examination, nor is there any other record evidence, for example, of any prior exchanges at prior proceedings which could have cured this defect. Because this record does not demonstrate that defendant was aware of the seriousness of the charges, his waiver of counsel was defective for this reason.

Although the district court failed to substantially comply with its obligations under MCR 6.005(D), making defendant's waiver of counsel ineffective, the error is subject to a harmless error analysis. An invalidly permitted self-representation that results in a complete deprivation of the right to counsel at a critical stage of the proceeding is structural error that requires automatic reversal, but a limited deprivation can be harmless error. *People v Willing*, 267 Mich App 208, 224; 704 NW2d 472 (2005). If the error is nonstructural, reversal is not required if it was harmless beyond a reasonable doubt. *Id.* at 223.

In this case, standby counsel was present and the district court freely allowed counsel's input, even asking defendant if he wished to consult with counsel about how to question the witness. More significantly, defendant has not explained how the outcome of this proceeding would have been different if he had not represented himself during the preliminary examination. It is clear that the testimony from the complainant, who was the lone witness, was sufficient to support defendant's bindover on the charged crimes, and there is no evidence that representation by counsel would have been able to alter this fact, especially given the low evidentiary threshold necessary for bindover. See *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003). Indeed, defendant was represented by counsel during the remaining proceedings, including at trial, and he has not identified any legitimate argument that was lost or testimony that was not developed in support of his defense. For these reasons, any error in failing to substantially comply with the waiver-of-counsel requirements at the preliminary examination was harmless beyond a reasonable doubt.

## B. PROSECUTOR'S CONDUCT

Because defendant did not challenge the prosecutor's conduct at trial, we review his claims of prosecutorial misconduct for plain error affecting his substantial rights. See *Roscoe*, 303 Mich App at 648.

### 1. IMPROPER VOUCHING

Defendant argues that the prosecutor impermissibly vouched for the complainant's credibility when arguing against defendant's motion for a directed verdict. This argument is misplaced. Improper vouching occurs when a prosecutor vouches for the credibility of a witness by suggesting that the government has some special knowledge of which the jury is unaware that the witness testified truthfully. See *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995); *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). In this case, the prosecutor's remarks were part of her argument to the trial court for why it should deny defendant's motion for a directed verdict. There was no jury. Furthermore, the prosecutor did not suggest that she had some special knowledge that the complainant was credible. The

prosecutor permissibly argued that the complainant's testimony, viewed in a light most favorable to the prosecution, was sufficient to support the CSC-I, domestic violence, and home invasion charges, and, for those reasons, the court should deny defendant's motion. The prosecutor's argument was responsive to defendant's motion and it based on the evidence that the prosecution had presented at trial, and thus was not clearly improper. Consequently, this unpreserved claim does not warrant appellate relief.

## 2. *BRADY* VIOLATION

Defendant argues that the prosecution violated *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), when it withheld the material evidence of the 911 recording. To establish a *Brady* violation, a defendant must prove: (1) that the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and, (3) viewed in its totality, the evidence is material. *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. at 150.

> To establish materiality, a defendant must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." [*Id*. (citation omitted.)]

Defendant has not established that the prosecution suppressed or withheld exculpatory evidence or otherwise violated his due process rights by withholding material evidence, as he contends. Preliminarily, there is no indication that the 911 recording was in the prosecution's possession. However, the trial testimony makes it apparent that the parties were aware that a call had been made to report the incident. More significantly, assuming that the prosecution possessed the recording of Davis's 911 call, there is no indication that it was favorable or material. The recording reveals that Davis initiated the 911 call by reporting that he had thrown defendant out of his house and that defendant had forced his way into the house. Defendant contends that the 911 recording could have been exculpatory because it proved that the complainant did not call 911 to report the incident. However, the complainant testified at trial that she did not call 911, and said that Davis called because defendant had taken her phones. Davis likewise testified at trial that he was the person who made the call. Given this testimony, the recording would have been cumulative for purposes of establishing the identity of the caller. To the extent that defendant argues that the recording was material because it could have been used to impeach Officer Cobble's testimony that the caller was a female, again, the complainant had already testified that she did not call 911, she and Davis both testified that Davis called 911, and the officer explained that he did not have personal knowledge of any of the 911 calls so his testimony was based only on what he was told by dispatch. Defendant has failed to logically explain how the fact that the trial court was mistaken about the identity of the caller in its findings of fact establishes that the prosecutor committed a *Brady* violation. For these reasons, defendant's claim necessarily fails.

## 3. KNOWINGLY ALLOWING FALSE TESTIMONY

A prosecutor may not knowingly use false testimony to obtain a conviction. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015). To this end, a prosecutor has a

constitutional duty to inform the trial court and a criminal defendant when a government witness offers perjured testimony; a prosecutor must correct false evidence when it is presented. *People v Lester*, 232 Mich App 262, 276-277; 591 NW2d 267 (1998), overruled on other grounds, *Chenault*, 495 Mich at 152. "[A] conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009).

Defendant highlights Officer Cobble's testimony that a female called 911, which was inconsistent with the complainant's prior testimony that she had not called 911, to argue that the prosecutor knowingly allowed false testimony. However, this inconsistency does not establish that the prosecutor knowingly used false testimony to obtain defendant's convictions. Preliminarily, it is questionable whether the officer's testimony can even be considered false. Both the complainant and Davis testified before Officer Cobble, and both testified that Davis was the person who called 911. Officer Cobble subsequently testified that he responded to the scene after dispatch had received two 911 calls, one of which was from a female. In response to the prosecutor's subsequent inquiry, the officer clarified that he did not hear the 911 calls himself and that "dispatch had stated . . . ." Thus, it was clear that the officer's testimony concerning the 911 call was based only on what he was told by dispatch. While the information supplied by dispatch may not have been accurate, there has been no showing that the officer willfully made a false statement regarding what he was told by dispatch. See *People v Lively*, 470 Mich 248, 253; 680 NW2d 878 (2004). Further, although the officer's testimony on this point differed from that of the complainant and Davis, there is no indication that the prosecutor sought to conceal this inconsistency from defendant and, as noted, she asked the officer if he had heard the calls himself. Defense counsel revisited this point during her cross-examination and, in response, the officer testified that dispatch "stated that it was a female caller as well." Defendant has failed to demonstrate a plain error.

## C. SUFFICIENCY OF THE EVIDENCE

In his last pro se claim, defendant argues that the prosecution presented insufficient evidence to prove beyond a reasonable doubt that he committed first-degree home invasion. We disagree.

A challenge to the sufficiency of the evidence is reviewed de novo. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, we view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the [trier of fact's] verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

The complainant's testimony that she did not invite defendant into her home, and that after knocking and identifying himself as a neighbor, defendant pushed his way inside after the complainant minimally cracked open the door, viewed in a light most favorable to the prosecution, was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that defendant entered the dwelling without permission. Accordingly, the prosecution

presented sufficient evidence to prove beyond a reasonable doubt that defendant committed first-degree home invasion.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause