*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DEQUAIN TOMEL BRAZZLE,

Defendant-Appellant.

UNPUBLISHED
September 17, 2019

No. 343532
Wayne Circuit Court
LC No. 17-007935-01-FC

Before: O'BRIEN, P.J., and BECKERING and LETICA, JJ.

PER CURIAM.

Defendant, Dequain Tomel Brazzle, appeals as of right his jury trial convictions of being a felon in possession of a firearm (felon-in-possession), MCL 750.224f, assault with a dangerous weapon (felonious assault), MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Brazzle was sentenced as a third-offense habitual offender, MCL 769.11, to 57 months to 10 years' imprisonment for the felon-in-possession conviction, 4 to 8 years' imprisonment for the felonious assault conviction, and a consecutive term of 2 years' imprisonment for the felony-firearm conviction. We affirm.

## I. FACTUAL BACKGROUND

This action arises out of the shooting of Brazzle's ex-girlfriend. The victim had recently broken up with Brazzle after discovering that he was cheating on her with another woman. At the time of the shooting, the victim was staying with a friend, Charita Dunbar. Late in the evening, the victim was sitting in her car outside of Dunbar's house talking to a recent acquaintance, Isiah Kendricks. Kendricks was beginning to fall asleep when he heard gunshots and shattering glass. Kendricks testified that someone was firing at the car, but he could not see the shooter. Dunbar was sleeping in the living room of her home when she awoke to the sound of gunshots. Dunbar hurried to the front door and saw Brazzle near the victim's driver's side door. Dunbar's mother was also home at the time and likewise saw Brazzle standing near the driver's side door of the victim's car.

The victim did not appear for trial and was declared unavailable by the trial court. As such, her preliminary examination testimony was presented to the jury. The victim testified that

-1-

she was talking to Kendricks in her car when he alerted her that somebody was at her window. The victim saw Brazzle outside and was attempting to start her car when Brazzle began shooting. She could not recall how many shots Brazzle fired, but indicated that a bullet struck her hip, a second bullet struck her knee, and two additional bullets grazed her back and leg.

As previously noted, Brazzle was convicted of felon-in-possession, felonious assault (against the victim), and felony-firearm. However, the jury acquitted Brazzle of assault with intent to murder, MCL 750.83, and an additional count of felonious assault (against Kendricks). This appeal followed.

## II. CLAIMS OF EVIDENTIARY ERROR

Brazzle argues that the trial court erred by allowing the prosecution to introduce evidence relating to the infliction or threat of physical injury under MCL 768.27c and evidence of other acts under MRE 404(b). We disagree.

" 'The decision whether to admit evidence falls within a trial court's discretion and will be reversed only when there is an abuse of that discretion.' " *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015) (citation omitted). An abuse of discretion occurs where the trial court incorrectly interprets a rule of evidence, *id.*, or "chooses an outcome that falls outside the range of reasonable and principled outcomes," *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

Brazzle first contends that the trial court erred by admitting testimony pursuant to MCL 768.27c. Brazzle specifically takes issue with the admission of testimony regarding statements that the victim made to Detroit Police Officer Kamel, and overheard by Officers Fuller and Greenwood, at a gas station that the victim drove to after the shooting. MCL 768.27c, which allows for the admission of statements relating to the infliction or threat of physical injury, was enacted to allow admission of statements made to law enforcement officers in domestic violence cases, even though the statements could otherwise be excluded as inadmissible hearsay. *People v Meissner*, 294 Mich App 438, 445; 812 NW2d 37 (2011). MCL 768.27c provides:

> (1) Evidence of a statement by a declarant is admissible if all of the following apply:
>
> (a) The statement purports to narrate, describe, or explain the infliction or threat of physical injury upon the declarant.
>
> (b) The action in which the evidence is offered under this section is an offense involving domestic violence.
>
> (c) The statement was made at or near the time of the infliction or threat of physical injury. Evidence of a statement made more than 5 years before the filing of the current action or proceeding is inadmissible under this section.
>
> (d) The statement was made under circumstances that would indicate the statement's trustworthiness.

(e) The statement was made to a law enforcement officer.

At trial, Officer Kamel was the only officer to testify regarding specific statements that the victim made at the gas station.[1] Officer Kamel testified as follows:

> *Q.* What was your purpose in speaking to the [victim] there at the gas station?
>
> *A.* Well, basically when medical is there, first thing that came out of my mouth basically is saying, "What happened, what happened? What's going on? Who shot you?" Because [the victim] was trying—the only thing she was saying—basically, she was saying, "Transport me to the hospital. I need to go to the hospital."
>
> First she said, "I don't know what happened. I don't know what happened, just somebody shot me." And then she said, "My ex-boyfriend Quan shot me."
>
> *Q.* Okay.
>
> *A.* That's the only thing she said to me.
>
> *Q.* Okay. And then did she leave in the ambulance after that?
>
> *A.* Yes, ma'am.

Brazzle argues that this testimony served no evidentiary purpose because the victim previously testified at the preliminary examination regarding the shooting and identified Brazzle as the shooter. We disagree. The victim's statements were properly admitted under MCL 768.27c. With regard to MCL 768.27c(1)(a), the victim explained the cause of her injury, indicating that she had been shot by Brazzle. Additionally, the action in which the evidence was offered involved domestic violence because Brazzle was on trial for physically harming a person with whom he previously had a dating relationship. See MCL 768.27c(1)(b), (5)(b) (defining

---

[1] Officer Fuller did not testify at trial, and, as to Officer Greenwood, Brazzle appears to take issue only with statements she overheard at the gas station, rather than those that the victim later made at the hospital. But review of the record shows that Officer Greenwood never testified about specific statements the victim made at the gas station. And to the extent that Brazzle objects to statements Officer Greenwood obtained from the victim during a subsequent interview at the hospital, Brazzle cannot claim error arising from those statements because defense counsel elicited the now objected-to testimony during cross-examination. Generally, "error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence . . . ." *People v Gonzalez*, 256 Mich App 212, 224; 663 NW2d 499 (2003) (quotation marks and citation omitted).

domestic violence), and (5)(c) (defining family or household member). Further, the statements were made to police officers at the gas station immediately after the shooting and, thus, were made "at or near the time of the infliction or threat of physical injury." MCL 768.27c(1)(c) and (e).

The record also indicates that the victim's statements to the police officers were trustworthy under MCL 768.27c(1)(d). MCL 768.27c(2) states that the following circumstances may be relevant to determining a statement's trustworthiness:

> (a) Whether the statement was made in contemplation of pending or anticipated litigation in which the declarant was interested.

> (b) Whether the declarant has a bias or motive for fabricating the statement, and the extent of any bias or motive.

> (c) Whether the statement is corroborated by evidence other than statements that are admissible only under this section.

Nothing in the record indicates that the victim made the statements in anticipation of upcoming litigation. Further, although the victim's history with Brazzle could have supplied a motive to fabricate her claims, the victim's statements were corroborated by other evidence. Dunbar and her mother heard gunshots outside of the house and saw Brazzle standing at the driver's side door of the victim's car just after the shooting occurred. Thus, the victim's identification of Brazzle was corroborated by two eyewitnesses, which suggests that her statements were trustworthy. Therefore, the victim's statements at the gas station met the statutory requirements for admission under MCL 768.27c.

Moreover, the victim's early identification of Brazzle to the police was especially valuable in light of the fact that she was not available to testify at trial, leaving the jury unable to assess her demeanor and other factors that affect the credibility of a live witness. Nevertheless, Brazzle implies that the testimony was cumulative and that the prosecution sought to introduce it in an attempt to "pile on" evidence against him. However, "whether a hearsay statement is cumulative is not dispositive . . . ." *People v Gursky*, 486 Mich 596, 623; 786 NW2d 579 (2010). Regardless of whether the evidence was cumulative, it served the valuable evidentiary purpose of corroborating the victim's preliminary examination testimony, demonstrating that the victim's statements identifying Brazzle as her assailant remained consistent over time.

Brazzle next argues that the trial court erred by admitting evidence of other acts of domestic violence under MRE 404(b). This Court need not analyze this issue because Brazzle only challenges the admissibility of this evidence under MRE 404(b), even though it was also admitted under MCL 768.27b. For evidence of other acts to be admissible under MRE 404(b), "the prosecutor must offer the 'prior bad acts' evidence under something other than a character or propensity theory." *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). MCL 768.27b, however, allows for the admission of "evidence of the defendant's commission of other acts of domestic violence or sexual assault . . . for any purpose for which it is relevant," MCL 768.27b(1), including for character and propensity purposes, *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010). Even if Brazzle could demonstrate that the evidence was

-4-

inadmissible under MRE 404(b), the identical testimony was properly admitted under MCL 768.27b. Because evidence admitted under MCL 768.27b can be used for any relevant purpose, including propensity, Brazzle cannot establish outcome-determinative error and, therefore, he is not entitled to relief. See *Railer*, 288 Mich App at 219-221 (Because MCL 768.27b provides an independent statutory basis for admitting evidence of prior acts of domestic violence, it matters not whether the evidence is inadmissible under MRE 404(b)).

## III. NEW TRIAL

Brazzle argues that the trial court erred by failing to grant him a new trial based on newly discovered evidence. We disagree.

A trial court's denial of a motion for a new trial is reviewed for an abuse of discretion. *People v Bennett*, 290 Mich App 465, 481; 802 NW2d 627 (2010). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217. This Court reviews a trial court's factual findings for clear error. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). " 'A trial court's factual finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court made a mistake.' " *People v Wiley*, 324 Mich App 130, 165; 919 NW2d 802 (2018) (citation omitted).

At sentencing, Brazzle presented a typewritten letter purportedly authored by the victim, in which she recanted her testimony about the shooting. Brazzle moved for a new trial, arguing that the letter constituted newly discovered evidence. " '[M]otions for a new trial on the ground of newly-discovered evidence are looked upon with disfavor, and the cases where . . . there was an abuse of discretion in denying a motion based on such grounds are few and far between.' " *People v Rao*, 491 Mich 271, 279-280; 815 NW2d 105 (2012) (citation omitted). To show that a new trial is warranted, Brazzle must satisfy the following four-part test:

> (1) [T]he evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [*Cress*, 468 Mich at 692 (quotation marks and citation omitted).]

At sentencing, the prosecution produced a recording of a telephone call between Brazzle and an unidentified woman to support its contention that the letter was not credible. In the telephone call, Brazzle discussed the possibility of obtaining a letter from "Michelle"[2] and authenticating it using a driver's license. The conversation then continued as follows:

> *Brazzle*: I might have Michelle's driver's license.
>
> *Unidentified Woman*: Where at?

---

[2] The prosecution argued that "Michelle" was a codename for the victim.

*Brazzle*: At the house.

*Unidentified Woman*: Where?

*Brazzle*: On the mantel.

*Unidentified Woman*: In the living room?

*Brazzle*: Yeah.

*Unidentified Woman*: Okay, I'll grab it.

The letter Brazzle presented to the trial court was unsigned, but included a photocopy of the victim's state identification card. In relevant part, the writer indicated that she did not see Brazzle with a gun and that he was not the person who shot her.

Brazzle contends that this evidence warranted a new trial because the victim recanted her testimony identifying him as the shooter. However, "[a]s a rule the court is not impressed by the recanting affidavits of witnesses who attempt to show that they perjured themselves . . . ." *People v Norfleet*, 317 Mich App 649, 661; 897 NW2d 195 (2016) (quotation marks and citation omitted). The trial court has the authority to determine whether recantation testimony is credible. See *People v Canter*, 197 Mich App 550, 560; 496 NW2d 336 (1992). The trial court observed that Brazzle had access to the victim's identification and presented no evidence, such as a signature or an affidavit from the victim, to prove that the letter was authentic. The trial court found that Brazzle encouraged the unidentified woman he was speaking with to craft a letter that might convince the trial court to vacate his convictions, and agreed that using a copy of the victim's identification would suffice to authenticate the letter. The trial court concluded that the letter was not credible.

The victim was not conclusively identified as the author of the letter, and thus, it is unclear whether she was actually the declarant. Instead, it appears that the letter was fabricated in an attempt to convince the trial court Brazzle was wrongfully convicted despite the evidence presented during trial. The trial court did not clearly err in concluding that the letter was not credible, and the court's conclusion was supported by evidence that the letter was created and presented to the court under questionable circumstances. This Court must generally defer to the trial court's credibility determinations. *Id*. The trial court's determination that the newly discovered evidence was not credible indicates that a different result is not probable on retrial. Accordingly, the trial court did not abuse its discretion by denying Brazzle's motion for a new trial.

## IV. OFFENSE VARIABLES

Brazzle argues that the trial court erred by assessing 10 points under offense variable (OV) 9 and OV 19, respectively. We disagree.

With regard to OV 9, Brazzle failed to properly preserve his argument by "raising the issue at sentencing, in a motion for resentencing, or in a proper motion to remand filed with this Court." *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012) (quotation marks and

citation omitted). Therefore, the portion of Brazzle's issue pertaining to OV 9 is unpreserved, and this Court's review is for plain error affecting Brazzle's substantial rights. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004).

However, Brazzle properly preserved his sentencing challenge to the extent that it pertains to the scoring of OV 19. *Jones*, 297 Mich App at 83. This Court reviews the trial court's factual findings for clear error. *People v Wellman*, 320 Mich App 603, 605; 910 NW2d 304 (2017). A trial court's factual findings are considered clearly erroneous when this Court is left with "a definite and firm conviction that an error occurred." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015) (quotation marks and citation omitted). " 'Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo.' " *Wellman*, 320 Mich App at 605, quoting *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

## A. OV 9

Brazzle argues that the trial court erred when it assessed 10 points under OV 9. OV 9 concerns the number of victims involved in a crime. MCL 777.39. Ten points are assessed under OV 9 if "2 to 9 victims . . . were placed in danger of physical injury or death, or 4 to 19 victims . . . were placed in danger of property loss . . . ." MCL 777.39(1)(c). Brazzle notes that while he was charged with two counts of felonious assault, the jury only convicted him of felonious assault against the victim and not against Kendricks. For this reason, Brazzle argues there were not two victims for purposes of scoring OV 9.

Relying on *People v Biddles*, 316 Mich App 148; 896 NW2d 461 (2016), Brazzle contends that sentencing courts may not look beyond the sentencing offense when assessing points under OV 9. In *Biddles*, this Court discussed precedent in which our Supreme Court held that, when sentencing a defendant, a trial court could only consider the defendant's conduct during the commission of a crime, not his or her conduct after the crime was completed. *Id.* at 165. This Court further noted that the Supreme Court had "specifically held that OV 9 can only be scored in reference to the sentencing offense." *Id.* at 167. Brazzle argues that, in accordance with *Biddles*, this Court may only consider the crimes for which he was convicted when scoring OV 9.

In making this argument, Brazzle misinterprets this Court's analysis in *Biddles*. In *Biddles*, the defendant and a codefendant were involved in an altercation at a party, during which the codefendant shot and killed a man. *Id.* at 151. The defendant was convicted of felon-in-possession on the basis of evidence that he was seen holding a gun after the shooting. *Id.* At the defendant's sentencing, the trial court assessed 10 points under OV 9. *Id.* at 167. On appeal, this Court held that the trial court erred because the "commission of the offense of felon-in-possession, in and of itself, simply did not place anyone in danger of physical injury or death." *Id.* This Court's statement that "OV 9 can only be scored in reference to the sentencing offense," *id.*, was only intended to express the conclusion that the defendant could not be assessed points under OV 9 based on the actions of his codefendant. *Biddles* does not stand for the notion that a trial court may only consider the specific conduct establishing the crimes that the defendant is convicted of when assessing points under OV 9.

Contrary to Brazzle's argument, our Supreme Court has stated that, under the plain language of MCL 777.39, "the sentencing court is to count 'each person who was placed in danger of injury or loss of life' as a victim." *People v Morson*, 471 Mich 248, 262; 685 NW2d 203 (2004), quoting MCL 777.39(2)(a). Thus, under MCL 777.39 a defendant may be assessed points under OV 9 for every victim who is placed in danger of injury or death, regardless of whether the defendant was convicted of a crime in relation to each victim. *Id*. See e.g., *People v Kimble,* 252 Mich App 269, 274; 651 NW2d 798 (2002), aff'd 470 Mich 305; 684 NW2d 669 (2004) (where the defendant was convicted of murdering a woman by shooting a gun through her windshield, the woman's fiancé and child, who were next to her in the car when she was shot, were victims for purposes of scoring OV 9). Here, Brazzle placed the victim and Kendricks in danger of injury or death by firing a gun into the passenger compartment of the victim's vehicle while she and Kendricks were seated inside. Therefore, the trial court did not err by assessing 10 points under OV 9.

Nor do we believe that the Supreme Court's recent opinion in *People v Beck*, ___ Mich ___; ___ NW2d ___ (2019) (Docket No. 152934), alters this conclusion. In that case, the defendant was convicted of felon-in-possession and felony-firearm, but acquitted of open murder and other additional charges. *Id*. at ___; slip op at 3. Although the sentencing guidelines recommended a minimum sentence of 22 to 76 months' imprisonment for the felon-in-possession conviction, the trial court imposed a sentence of 240 to 400 months. *Id*. The trial court cited a number of reasons for its substantial departure from the guidelines recommendation, including its belief that a preponderance of the evidence presented at trial established that the defendant committed the homicide at issue in the open murder charge, even if the jury was unable to find the defendant guilty of that charge beyond a reasonable doubt. *Id*. at ___; slip op at 3-4. The Supreme Court held that the trial court's reliance on "acquitted conduct" at sentencing violated the defendant's due-process rights. *Id*. at ___; slip op at 2, 18-21. The Court reasoned that "[w]hen a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent," and "conduct that is protected by the presumption of innocence may not be evaluated using the preponderance-of-the-evidence standard without violating due process." *Id*. at___; slip op at 18-19.

The trial court's consideration of Kendricks as a victim for purposes of OV 9 does not run afoul of *Beck*'s proscription against sentencing a defendant as though he or she committed a crime for which the jury returned a not-guilty verdict. See *id*. at ___; slip op at 2 ("Once acquitted of a given crime, it violates due process to sentence the defendant as if he committed that very same crime."). The trial court did not need to find that Brazzle had actually committed felonious assault against Kendricks in order to support the assessment of 10 points under OV 9. Instead, as explained earlier, the conduct underlying Brazzle's conviction of felonious assault against the victim—that is, shooting a gun into the passenger compartment of the victim's car, where she and Kendricks were sitting—was sufficient to warrant the trial court's scoring of OV 9. See *Kimble*, 252 Mich App at 274.

## B. OV 19

Brazzle also argues that the trial court erred when it assessed OV 19 at 10 points. A trial court must assess 10 points for OV 19 if a defendant "interfered with or attempted to interfere with the administration of justice . . . ." MCL 777.49(c). Generally, OV 19 is used to score conduct that "constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016). Interference with the administration of justice typically involves activity which "hampers, hinders, or obstructs the process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 344; 844 NW2d 127 (2013). The following actions have previously supported the assessment of 10 points under OV 19: "providing a false name to the police, threatening or intimidating a victim or witness, telling a victim or witness not to disclose the defendant's conduct, . . . attempting to deceive the police during an investigation, . . . and committing perjury in a court proceeding." *Id*. at 344. However, this list is not exhaustive.

Brazzle attempted to interfere with the administration of justice by convincing the trial court that a letter, supposedly written by the victim, constituted newly discovered evidence warranting a new trial. The trial court disagreed, and opined that the letter was entirely untrustworthy because Brazzle proffered no evidence, such as a signature or an affidavit, to prove that the letter was authentic. To the contrary, as explained earlier, the trial court found that Brazzle participated in a plot to submit false evidence to the court in an attempt to obtain a new trial. When scoring the offense variables, the trial court may rely on inferences drawn from the record, *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012), and the trial court did not clearly err in its factual findings regarding this issue. Ultimately, Brazzle's conduct amounted to little more than a "self-serving attempt[] at deception," which was designed to mislead the trial court. *People v Ericksen*, 288 Mich App 192, 204; 793 NW2d 120 (2010). Because Brazzle attempted to interfere with the administration of justice, the trial court did not err by assessing 10 points under OV 19. Accordingly, Brazzle is not entitled to resentencing.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Jane M. Beckering
/s/ Anica Letica