# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL ANTHONY WELLMAN,

Defendant-Appellant.

FOR PUBLICATION
August 3, 2017
9:00 a.m.

No. 332429
Delta Circuit Court
LC No. 15-009076-FH

Before: MARKEY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Early in the afternoon on January 23, 2015, victim and defendant, longtime friends, took a bus together to a walk-in clinic. They returned around 4:00 p.m. The victim went back to her apartment alone. Defendant texted the victim that evening indicating that she should come over around 8 p.m. for a drink at his apartment. She went and had one spiced rum and coke. From there she went to another friend's home. As that friend dropped the victim off at her apartment, the victim witnessed defendant stumbling and staggering back from the Kon Tiki Bar. After the victim's friend dropped her off, and she started walking to her girlfriend's house, she passed by defendant's apartment. Remembering she had left a basket of clean laundry there, she decided to stop by and retrieve it. While there, the assault occurred.

Defendant appeals by right the sentence imposed by the trial court after his jury trial conviction of assault with intent to commit criminal sexual conduct, MCL 750.520g(1). Defendant was sentenced as a fourth habitual offender, MCL 769.12, to serve a prison term of 5 to 25 years. We affirm.

Regarding sentencing, this Court reviews the trial court's determination for clear error. Sentencing guidelines must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error . . ." *Id*. at 438 "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e. the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. at 438. MCL 769.12. "In determining how offense variables should be scored, this Court reads the sentencing guideline statutes as a whole." *People v Bonilla-Machado*, 489 Mich 412, 422; 803 NW2d 217 (2011).

-1-

"The cardinal rule of statutory construction is to identify and to give effect to the intent of the Legislature." *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 Mich (1995). *Mull v Equitable Life Assurance Society of the United States*, 444 Mich 508, 514, n7; 510 NW2d 184 (1994). The goal in doing so is to give effect to the Legislature's intent, focusing first on the plain language of the statute. *Lamphere Schools v Lamphere Federation of Teachers*, 400 Mich 104, 110; 252 NW2d 818 (1977). Individual words and phrases are not read for bare meaning but instead, read in the context of the entire legislative scheme. *Bailey v United States*, 516 US 137 (1995). When, as here, "the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted." *Malpass v Department of Treasury*, 494 Mich 237, 249; 833 NW 2d 272 (2013) citing *Sun Valley Foods Co v Ward*, 460 Mich 120, 123; 596 NW 2d 119 (1999).

Defendant does not dispute the conviction but alleges there to be an error in the scoring of offense variable 4 (OV 4) resulting in an incorrect sentence. Defendant argues that OV 4 was scored based upon inaccurate information and thus, in violation of his state and federal due process rights. OV 4 should be scored 10 points where "[s]erious psychological injury requiring professional treatment occurred to the victim." MCL 777.34(1)(a). "In making this determination, the fact that treatment has been sought is not conclusive," MCL 777.34(2). Defendant argues that the record does not support a score of 10 points because the victim cannot be proven to have sustained a serious psychological injury, let alone one requiring professional treatment, from his attack. Further, defendant emphasized the fact that the victim did not supply a victim impact statement or explicitly testify that defendant caused her psychological injuries. The ruling placed the total offense variables (OVs) scoring at 50 points, the lowest number for Level V (50-74 points).

While the Crime Victim's Rights Act, MCL 780.751 et seq., affords a victim the right to submit impact statements into the presentence investigation report and at sentencing, such a submission is not necessary in order to establish evidence of psychological harm. A right is defined in relevant part as "a power or privilege to which one is justly entitled" or "something to which one has a just claim." *Merriam Webster's Collegiate Dictionary*, 11th Edition. Although the victim did not provide a statement, she did testify at trial, relaying how the assault occurred. She stated that, upon walking into the apartment to pick up a load of clean laundry she had finished in defendant's basement because her apartment did not have a washer or dryer, defendant shut and locked the door behind her and pinned her in a bear hug, picked her up, and lifted her up the stairs into his apartment. There, he pinned her against the refrigerator and ripped off her t-shirt, repeatedly punching her in the face with his fists. She testified that he then laid atop her and stated "I will drag you bloody and beaten to my bed and then rape you," threatening to kill her if she refused. When he momentarily lost his footing, she escaped and called 911. She testified that she had been "scared for [her] life" and how the beating had been "traumatic." The police witnessed the victim "hysterical", with multiple facial lacerations and dripping in blood upon arrival.

"A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of the presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary

examination or trial," as stated by *People v Ratklov (after remand)*, 201 Mich App 123, 125; 505 NW2d 886 (1993).

Based on analysis of the statute's clear meaning, the scoring of OV 4 is not an abuse of discretion by the trial court. Whether or not the victim has undergone psychological treatment is irrelevant.[1] MCL 777.34(2). The trial court explained that 10 points was the appropriate score "[n]ot simply because these events that occurred to an ordinary person would give rise [to psychological injury which would require professional treatment], but in her particular case, they in fact, did give rise [to psychological injury]," noting the victim's reluctance and difficulty in giving testimony and appearing on the witness stand. Furthermore, the preliminary examination was closed to public by the trial court at the victim's request, with an explanation of how cases involving sexual crimes were "very sensitive" and could be "emotionally traumatic for the victims involved," especially because this one involved a "fairly significant violent act with blood." Also, the victim was allowed to bring her mother as a support person, to the preliminary examination. During cross-examination, the victim stated that she was "going to need a break pretty quick" as she was "pretty shook up." Furthermore, she was currently on disability for her anxiety and posttraumatic stress disorder (PTSD).

This Court has held that a victim's "statements about feeling angry, hurt, violated, and frightened" supports a score of 10 points for OV 4. *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012). This approach also comports with *People v Calloway*, _ Mich _;_ NW2d_ (2017), which reversed this Court's opinion in *People v Calloway*, the unpublished per curiam opinion of the Court of Appeals, issued March 22, 2016. Therefore, this Court affirms the sentence by extending *Calloway*, which involved a sentence of OV 5, in deference to the statute's plain meaning and exact verbiage, both included in the same legislation. At issue in *Calloway* was the scoring of OV 5 (serious psychological injury to victim's family requiring treatment), MCL 777.35, which provides as follows:

> (1) Offense variable 5 is psychological injury to a member of a victim's family. Score offense variable 5 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> (a) Serious psychological injury requiring professional treatment occurred to a victim's family.............................. 15 points
>
> (b) No serious psychological injury requiring professional treatment occurred to a victim's family............................... 0 points

---

[1] At trial the trial court stated that the prosecutor has been counseling with Pathways which clearly is a transcription error or the judge misspoke because it is obvious from context that the court meant the victim.

(2) Score 15 points if the serious psychological injury to the victim's family may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive.

Considering the trial court's scoring of OV 5 at 15 points, this Court's *Calloway* panel noted that although the victim's stepfather reported "the 'incident has had a tremendous traumatic effect on him and his family'" "that 'will change them for the rest of their lives,'" "there is no evidence indicating that any member of the victim's family intended to receive professional treatment in relation to the incident or required professional treatment because of the incident." *Calloway*, unpub at 7.

The Michigan Supreme Court looked to the language of MCL 777.35. The Court reasoned that "[a]t first blush, the second subsection of MCL 777.35 appears to contradict the first concerning whether professional treatment is required for points to be assessed. However, the more specific second subsection is clearly intended as a further explication of the circumstances justifying a 15-point score." *Calloway*, __ Mich at __; slip op at 5. The Court defined "serious" to mean " 'having important or dangerous possible consequences.' " *Id*. at 6, quoting *Merriam-Webster's Collegiate Dictionary* (11th ed). The Supreme Court interpreted the statute to mean that the family member need not be, at present, seeking or receiving professional treatment nor carrying the intent to do so, in contrast to what the Court of Appeals had held. In deciding this, they overruled *People v Portellos*, 298 Mich App 431, 449; 827 NW2d 725 (2012), noting that "the Court of Appeals did not discuss any details regarding the victim's grandmother's "emotional response to the [victim's] death" or consider the letter she submitted "that spoke about her disbelief, grief, anger, and heartbreak at the loss of the [victim]." *Calloway*, __ Mich at __; slip op at 8.

Given the similarity between the language of MCL 777.34 and MCL 777.35, we extend the Supreme Court's analysis in *Calloway* to OV 4. There is no reason to assume that OV 4 and OV 5 should be interpreted contrastingly when they are two branches stemming from the same tree, for "why should we abandon our usual presumption that 'identical words used in different parts of the statute' carry 'the same meaning' " *Henson v Santander Consumer USA Inc.*, ___ US ___, ___; 137 S Ct 1718, ___ L Ed 2d ___ (2017), quoting *IBP, Inc v Alvarez*, 546 US 21, 34; 126 S Ct 514; 163 L Ed 2d 288 (2005). When the legislature uses identical words or phrases, this Court interprets them as synonymous.

The Supreme Court, in applying the plain language of MCL 777.35 to the facts of the case, determined in *Callaway* that the score of 15 points for OV 5 was appropriate upon consideration of the statements the victim's family gave in the presentence investigation report which demonstrated the serious psychological issues they were suffering that may require future professional treatment in the future. One of the statements referenced in making this determination, for example, was by the victim's stepfather. Addressing the trial court at the sentencing, the stepfather stated how "since [the day of the murder], [he had] thought about this every single day" and how he would "probably think about it for the rest of [his] life."

This statement is no great departure from the statements the victim made in this case at trial. The victim here has explained that the assault was traumatic for her and that one of the lasting effects on her was how "everyday life was harder for her now." Moreover, her body

language was evidence of this difficulty; while testifying she was "fidgeting" and nervous, not wanting to have to be in the same room as defendant. She also testified about her "continuing memory loss." Furthermore, it was acknowledged by all involved in the trial, save for the jury, that she was suffering digestive issues since the incident and was experiencing them that day in trying to get to the courthouse to give her testimony, as she had to stop at several rest stops just to make it there. Therefore, the victim's statements support a score of 10 points for OV 4 in adherence to the legislative intent and thus, the trial court did not abuse its discretion in determining such.

Affirmed.

/s/ Jane E. Markey
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra