*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

LONNIE TODD BARNES,

      Defendant-Appellant.

FOR PUBLICATION
June 11, 2020
9:00 a.m.

No. 348038
Wayne Circuit Court
LC No. 16-001044-01-FC

Before: LETICA, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his resentencing for first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(c), and kidnapping, MCL 750.349.[1] The trial court resentenced defendant to concurrent terms of 42 to 80 years' imprisonment for each conviction. We affirm.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

The relevant facts were summarized in this Court's previous decision in this case:

> One evening in May 2013, PD [the victim] decided to search the Internet for social meet-up sites as she had recently moved to Detroit and had no local friends. She discovered a telephone "hotline," which she called and then connected with defendant. PD agreed to meet defendant in person because he promised to take her sightseeing. Defendant instead drove PD to a secluded location and propositioned her for sex. When PD declined, defendant sexually assaulted her by forcibly penetrating her both vaginally and anally. Defendant conceded that he did have sex with PD (this was conclusively established by DNA evidence), but claimed it was consensual. Because defendant elected not to testify at trial, PD's

---

[1] Defendant was also convicted of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b), but the trial court vacated that conviction at his initial sentencing "on double-jeopardy grounds at the request of the prosecutor."

was the sole account of the evening's events heard by the jury. The prosecution also presented the testimony of another woman, SG, who described a similar attack perpetrated upon her by defendant. [*People v Barnes*, unpublished per curiam opinion of the Court of Appeals, issued January 9, 2018 (Docket No. 333841), p 1.]

After the jury trial convictions, the trial court sentenced defendant as a fourth habitual offender to 42 to 80 years' imprisonment for each conviction. *Id*. On appeal, a panel of this Court affirmed defendant's convictions, but remanded for resentencing because of an error in scoring defendant's prior record variable (PRV) 7 that resulted in "a reduction in defendant's overall PRV score . . . ." *Id*. at 6. At resentencing, the trial court reassessed defendant's PRV and offense variable (OV) scores, and then resentenced him to 42 to 80 years' imprisonment for each conviction. Defendant's sentence exceeded his sentencing guidelines, which were 10½ to 35 years' imprisonment. The trial court explained that it exceeded the guidelines because it found that they did not adequately reflect the gravity of defendant's crimes. This appeal followed.

## II. SENTENCING GUIDELINES

Defendant contends that the trial court improperly assessed OV 3 at 10 points because PD did not suffer a bodily injury requiring medical attention. He also argues that the trial court improperly assessed OV 10 at 15 points because his preoffense conduct was "run-of-the-mill" planning to effect the crime, not "predatory conduct." We disagree with both arguments.

A trial court's factual findings are reviewed for clear error, and whether those factual findings justify the score imposed is reviewed de novo. *People v Wellman*, 320 Mich App 603, 605; 910 NW2d 304 (2017). A finding is clearly erroneous "if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Wiley*, 324 Mich App 130, 165; 919 NW2d 802 (2018). "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a [presentence investigation report], plea admissions, and testimony presented at a preliminary examination." *People v McChester (On Remand)*, 310 Mich App 354, 358; 873 NW2d 646 (2015). Additionally, the trial court "may rely on reasonable inferences arising from the record evidence" when making its assessment. *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012).

## A. OV 3

A trial court may assess 10 points for OV 3 when "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). Bodily injury encompasses "anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011). In the context of sexual assaults, sexually transmitted infections and pregnancy are bodily injuries for the purpose of assessing this OV. *Id*. (holding infection as an injury); *People v Cathey*, 261 Mich App 506, 513-514; 681 NW2d 661 (2004) (holding pregnancy as an injury). Additionally, under the terms of the statute, " 'requiring medical treatment' refers to the necessity for treatment and not the victim's success in obtaining treatment." MCL 777.33(3).

The evidence on the record was sufficient for the trial court to infer PD had suffered a bodily injury requiring medical treatment. After the sexual assault, an ambulance transported PD

to the hospital where she underwent a forensic medical examination. A specially trained nurse observed two injuries to PD's genital area: a point of tenderness measuring three inches by one inch on PD's perineum, and a point of tenderness measuring about one and one-quarter inches by one-half inch on the area just outside of PD's anus. While the nurse could not testify with medical certainty that these injuries were the result of the sexual assault, the injuries were consistent with PD's description of the sexual assault. The nurse also prescribed PD emergency contraception to prevent pregnancy and prophylactic medication to prevent PD from contracting sexually transmitted infections (STIs). The nurse further instructed PD to follow up with her primary care physician for HIV testing. Under these circumstances, the trial court did not clearly err by finding that medical treatment was necessary to address PD's injuries, and therefore its assessment of 10 points for OV 3 was proper.[2]

---

[2] Defendant argues that this Court's decision in *People v Armstrong*, 305 Mich App 230; 851 NW2d 856 (2014), should control our analysis. In *Armstrong*, this Court held that the trial court incorrectly assessed 10 points for OV 3 because the record did not support the trial court's finding that the victim's injury necessitated medical treatment. *Id*. at 246. Here, unlike in *Armstrong*, PD's and the examining nurse's testimonies show that PD needed and received prophylactic medical treatment. Thus, defendant's argument is unavailing.

The thrust of defendant's argument is that the prophylactic medical treatment here does not fall under OV 3. While no published case has held that prophylactic treatment for pregnancy or STIs in the context of treating a victim of sexual assault justifies a score of 10 points for OV 3, a long line of unpublished cases have. See *People v Gibson*, unpublished opinion of the Court of Appeals, issued September 22, 2009 (Docket No. 285486), pp 7-8; *People v Atchison*, unpublished opinion of the Court of Appeals, issued June 29, 2010 (Docket No. 291671), p 3; *People v Whitney*, unpublished opinion of the Court of Appeals, issued May 15, 2013 (Docket No. 303399), p 2 *People v Fletcher*, unpublished opinion of the Court of Appeals, issued September 16, 2014 (Docket No. 316184), p 2; *People v Brown*, unpublished opinion of the Court of Appeals, issued November 20, 2014 (Docket No. 317066), p 4; *People v Johnson*, unpublished opinion of the Court of Appeals, issued August 9, 2018 (Docket No. 335014), p 4; *People v Saunders*, unpublished opinion of the Court of Appeals, issued October 18, 2018 (Docket No. 339629), p 6; *People v Kemp*, unpublished opinion of the Court of Appeals, issued December 27, 2018 (Docket No. 339791), pp 3-4; *People v Maybin*, unpublished opinion of the Court of Appeals, issued April 19, 2019 (Docket No. 335180), pp 7-8.

Further, even if the trial court erred by assessing 10 points for OV 3, PD undoubtedly sustained a bodily injury from the sexual assault—the two points of tenderness in her genital area. This would, at the very least, justify a scoring of 5 points for OV 3. See MCL 777.33(1)(d). Because defendant's challenge to OV 10 is without merit (as will be explained) defendant's total OV score would drop from 75 points to 70 points, which would not adjust his minimum sentencing range. See MCL 777.62; MCL 777.16y. "When a sentencing error does not alter the appropriate guidelines range, resentencing is not required." *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

## B. OV 10

Under MCL 777.40(1)(a), a trial court properly assesses 15 points for OV 10 if the court finds that an offender (1) exploited a vulnerable victim and (2) engaged in predatory conduct. *People v Huston*, 489 Mich 451, 466; 802 NW2d 261 (2011). A "vulnerable victim" is one who has "readily apparent susceptibility . . . to injury, physical restraint, persuasion or temptation." MCL 777.40(3)(c). In *People v Cannon*, 481 Mich 152, 158-159; 749 NW2d 257 (2008), our Supreme Court explained:

> Factors to be considered in deciding whether a victim was vulnerable include (1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious.

The absence of these factors does not preclude a finding of victim vulnerability when determining whether it is appropriate to assess 15 points for predatory conduct so long as the evidence shows that the victim was otherwise vulnerable as defined in MCL 777.40(3)(c). *Id.* at 159 n 11. That said, the mere existence of one of these factors does not automatically render the victim vulnerable. MCL 777.40(2); *Cannon* 481 Mich at 159.

The circumstances of this case show PD was a vulnerable victim. While PD chose to meet with defendant in person after they spoke on a chatline, PD made this decision because defendant told her that he was also looking for friendship—PD previously rejected other men who were looking only for a sexual encounter. Defendant was aware both that PD was new to the area and that she was wary of going out because of stories she had heard about crimes committed against young women. Defendant played off these concerns and reassured PD that he could be trusted. As a result, despite her concerns, PD trusted defendant and accepted his offer to go sightseeing. But instead of sightseeing, defendant drove to more and more secluded and isolated parts of the city, and, in an alley, defendant sexually assaulted PD. From this evidence, the trial court inferred that defendant identified PD as vulnerable—because of her unfamiliarity with the city—and isolated her for the purposes of sexually assaulting her. Additionally, the trial court found the difference in size and strength between defendant and PD contributed to PD's vulnerability. On this record, we agree with the trial court's conclusion that PD was a vulnerable victim.

The next question is whether defendant engaged in predatory conduct. "Predatory conduct" means "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). In *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011), our Supreme Court explained that "predatory conduct"

> does not encompass *any* "preoffense conduct," but rather only those forms of "preoffense conduct" that are commonly understood as being "predatory" in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or preoffense conduct involving nothing more than run-of-the-mill planning to

effect a crime or subsequent escape without detection.  [Quotation marks and citation omitted.]

The *Huston* Court explained that "predatory conduct" is not merely exploiting a vulnerability "largely within the victim's own control" (which is covered by MCL 777.40(1)(c)) nor exploiting a vulnerability "largely outside of the victim's control" (which is covered by MCL 777.40(1)(b)). *Huston*, 489 Mich at 460-461.  Rather, "predatory conduct" is conduct that "itself created or enhanced the vulnerability in the first place[.]" *Id*. at 461.

We agree with the trial court that defendant's actions amount to predatory conduct. Defendant asserts that because most sexual assaults do not occur in public, his search for a private area in which to sexually assault PD was "run-of-the-mill planning to effect a crime . . . ." *Id*. at 462.  But this glosses over several aspects of defendant's preoffense conduct.  Defendant represented to PD that he was not looking for sex and that she did not need to be afraid of him. These representations were clearly intended to assuage PD's apprehensions of meeting defendant in person, and to coax PD into trusting him.  Defendant was successful, and PD agreed to meet him, despite her concerns.  Defendant used PD's trust to have her get into a car with him—alone— and drive to locations of his choosing.  Defendant, knowing that PD was unfamiliar with the city, then drove PD to an isolated location and sexually assaulted her.  Thus, defendant's preoffense conduct went beyond "run-of-the-mill planning"; defendant built a rapport with PD to gain her trust, then abused that trust to create a situation where he could use his superior size and strength to sexually assault her.  Such conduct is "commonly understood as being 'predatory' in nature," *id*., and therefore, the trial court properly assessed 15 points for OV 10.

## III.  UPWARD DEPARTURE SENTENCE

Defendant next challenges the proportionality of his sentence that departed from his guidelines-recommended sentence.  Finding no errors, we affirm the trial court's sentence.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015).  The relevant questions for appellate courts reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality. *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017).  A trial court abuses its discretion "in applying the principle of proportionality by failing to provide adequate reasons for the extent of the departure sentence imposed[.]" *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017).  In *Dixon-Bey*, 321 Mich App at 525, this Court explained that

> relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight. [Quotation marks and citations omitted.]

Other factors include the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation.  *Id*. at 525 n 9.

-5-

After reviewing defendant's PRV and OV scores, the trial court determined that defendant's advisory minimum sentence range was 10½ to 35 years (126 to 420 months). The trial court decided to depart from the guidelines range and sentenced defendant to 42 to 80 years' imprisonment. Thus, for defendant's sentence to be reasonable, the trial court must have provided adequate reasons for its seven-year upward departure sentence. See *Steanhouse*, 500 Mich at 476.

In support of the upward departure, the trial court stated that the guidelines failed to adequately reflect the nature and effects of defendant's crimes. When assessing OV 4 (psychological injury to victim) at 10 points at defendant's original sentencing, the trial court stated that, on the basis of its observations of PD when she testified, she appeared as though "her life had been shattered by what [defendant] did to her . . . ." During the resentencing hearing, the trial court stated that it did not believe OV 4, even when scored at 10 points, adequately covered PD's psychological injury:

> [PD] testified three years later after the incident. Some people show some signs of healing within that time. She showed no signs of healing. It appeared that she was irreparably broken beyond repair at the time that the Court saw her testify here in court as I described when we were in court the other day.

> In my thirty-three years in this courtroom I've never seen a complaining witness, a victim, so obviously shattered as she testified in court as a result of the impact of this crime upon her.

The trial court made a similar assessment concerning the inadequacy of OV 13 (continuing pattern of criminal behavior), expressing concern that the statute did not differentiate between heinous felonies like first-degree CSC and other felonious acts like home invasion. The trial court also considered factors not encompassed by the guidelines, including defendant's lack of remorse and the minimal likelihood of defendant being rehabilitated. In support of these findings, the trial court noted defendant had gone beyond simply maintaining his innocence, and had asserted PD brought the allegations after the two had met for a consensual act of prostitution and defendant had refused to pay PD. This assertion, reasoned the trial court, indicated defendant did not understand the nature or consequences of his actions and was seeking to recast himself as the victim, minimizing his rehabilitation potential and demonstrating his lack of remorse.

In sum, when the trial court departed from the sentencing guidelines, it articulated several reasons why the guidelines failed to provide a proportionate sentence and why an increase in defendant's sentence was proportional to the circumstances of defendant's crimes. The trial court's reasons for the departure were proper, and they provided an adequate basis for its seven-year upward departure sentence.

Defendant asserts that the trial court erred because it failed to consider mitigating circumstances and focused solely on punishment and deterrence when imposing sentence. While it is true that the trial court provided a cursory analysis of the mitigating circumstances offered by defendant before stating that the circumstances were not applicable to the circumstances of this case, this does not amount to error. As recently articulated by this Court, "trial courts are not required to expressly or explicitly consider mitigating factors at sentencing." *People v Bailey*, ___ Mich App ___; ___ NW2d ___ (2019) (Docket No. 342175); slip op at 12. Thus, even the trial

court's minimal consideration and rejection of the mitigating factors went beyond what was required.

Defendant also asserts that the trial court failed to properly consider penological goals other than retribution and deterrence in imposing a departure sentence. However, this assertion is not borne out by the record. The trial court acknowledged that the departure sentence served the purpose of punishing defendant and deterring others from committing similar crimes. The trial court stated that defendant's conduct showing that there was a minimal likelihood of rehabilitation also supported the departure from the guidelines range. Finally, the trial court stated it believed incapacitation was "very significant and important for these types of crimes," and the departure sentence was reasonable and proportionate when assessed against this penological goal as well. Thus, the record does not support defendant's characterization of the trial court's motivations in passing sentence.

Defendant lastly asserts the trial court, in sentencing defendant, impermissibly relied on evidence of an alleged previous sexual assault committed by defendant, admitted as other-acts evidence at trial. See MRE 404(b)(1). Defendant does not contest the admissibility of the evidence, but rather asserts that the trial court used the evidence to make an independent finding that defendant committed the other alleged sexual assault, thereby impermissibly increasing defendant's sentence. This, argues defendant, violated his constitutional right to be considered innocent of a crime until proven guilty and his right to a jury trial. US Const, Ams VI and XIV; Const 1963, art 1, § 17 and § 20.

Our Supreme Court recently addressed a similar question in *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019). In *Beck*, the trial court increased the defendant's sentence based upon its finding, by a preponderance of the evidence, that the defendant had committed the offense of which he had just been acquitted. *Id*. at 612. Our Supreme Court held that this violated a defendant's right to due process, stating "[o]nce acquitted of a given crime, it violates due process to sentence the defendant as if he committed that very same crime." *Id*. at 609. However, the due process violation extended only so far as "acquitted conduct." *Id*. As this Court recently explained, "*Beck* expressly permits trial courts to consider uncharged conduct . . . ." *People v Roberts*, ___ Mich App ___; ___ NW2d ___ (2020) (Docket No. 339424); slip op at 5. See also *Beck*, 504 Mich at 626 ("When a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard.").

In this case, the trial court used evidence that defendant had committed another, similar sexual assault as justification for departing from the sentencing guidelines. The jury made no findings about whether defendant committed this conduct, as he was never charged with it. Thus, this other-acts evidence was the type of "uncharged conduct" that "*Beck* expressly permits trial courts to consider . . . ." *Roberts* ___ Mich App at ___; slip op at 5. The trial court indeed considered the other-acts evidence, found it to be true, and concluded that it demonstrated defendant's "attitude towards women and that the sex is a violent act that he engaged in against these women." Because the other-acts evidence relied on by the trial court was not the type of impermissible "acquitted conduct" identified in *Beck*, the trial court did not err by considering this evidence when sentencing defendant.

Affirmed.

/s/ Anica Letica
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien