*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 18, 2020

Plaintiff-Appellee,

v

No. 347246
Ottawa Circuit Court
LC No. 18-042008-FC

BRET JOSEPH BARDWELL,

Defendant-Appellant.

Before: MURRAY, C.J., and JANSEN and MARKEY, JJ.

PER CURIAM.

Defendant appeals as of right his convictions following a jury trial of first-degree home invasion, MCL 750.110a(2); and assault with intent to commit murder, MCL 750.83. Defendant was sentenced to 5 to 20 years' imprisonment for first-degree home invasion, and 15 to 40 years' imprisonment for assault with intent to commit murder. We affirm.

## I. FACTUAL BACKGROUND

In the early morning hours of October 9, 2017, Raymond Bardwell awoke to being attacked with a hammer while he was sleeping in his bed. The attacker hit Raymond several times in the face, head, arms, and hands. Raymond almost lost his eye in the attack, and further suffered a broken nose, two broken fingers, two broken wrists, and severe head injuries. Because it was dark, Raymond did not see the face of his attacker. However, Raymond recognized the attacker's voice and testified that he had "[n]o doubt" it was defendant, his son.

Ottawa County Sheriff's Detective Bridget Schickinger testified that defendant was interviewed as part of the investigation in this case, and admitted to attacking Raymond. During the interview, defendant provided a detailed account of how he had planned the attack, entered Raymond's home, attacked Raymond, and then cut the power to the house so that Raymond could not call for help. Defendant further detailed how he buried a key to Raymond's home and the hammer used in the attack at a cemetery, and gave the sweatshirt and gloves he was wearing to his friend, Jeremy Smith, to dispose of. Detective Schickinger testified that during the interview, defendant claimed he would "do this over and over again, a hundred percent." However, at trial,

-1-

defendant testified that he lied to Detective Schickinger to protect his wife, Brooklyne Bardwell, and Smith, who were the actual attackers.

Defendant was convicted by a jury and sentenced as noted *supra*. This appeal followed.

## II. SUFFICIENCY OF EVIDENCE

Defendant first argues that the prosecution failed to present constitutionally sufficient evidence to support his convictions. We disagree.

A challenge to the sufficiency of the evidence is reviewed de novo on appeal. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). In determining whether the prosecution presented sufficient evidence to sustain a defendant's conviction, this Court reviews the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013). "The standard of review is deferential: a reviewing court is required to draw all inferences and make credibility choices in support of the jury verdict." *People v Gonzalez*, 484 Mich 636, 640-641; 664 NW2d 159 (2003) (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). "Intent may be inferred from all the facts and circumstances." *People v Cameron*, 291 Mich App 599, 615; 806 NW2d 371 (2011). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Murphy*, 321 Mich App 355, 359; 910 NW2d 374 (2017) (quotation marks and citations omitted).

In this case, defendant does not argue that the elements of first-degree home invasion or assault with intent to commit murder were not proven beyond a reasonable doubt. Rather, defendant argues that the evidence presented by the prosecution, that Raymond recognized that his attacker was his son because Raymond recognized his son's voice, was constitutionally insufficient to establish defendant as Raymond's attacker.

"Identity is always an essential element of every crime." *People v Fairey*, 325 Mich App 645, 649; 928 NW2d 705 (2018), citing *People v Oliphant*, 399 Mich 742, 789; 250 NW2d 443 (1976). "Undoubtedly voice is a competent means of identification, and one by such means alone may be sufficiently identified." *People v Hayes*, 126 Mich App 721, 725; 337 NW2d 905 (1983) (quotation marks and citation omitted).

Raymond testified that although he did not see his attacker's face, he heard the attacker say "I can't believe you called the police," and recognized defendant's voice. The prosecution presented ample evidence to support Raymond's identification. Raymond testified that he was familiar with defendant's voice because Raymond was defendant's father. Defendant had lived with Raymond up until "two or three years" ago. Even after defendant moved, Raymond and defendant would often do things together, for example attend Lions football games, go shopping, and go out to eat. Moreover, the prosecution presented sufficient evidence to establish the context of the attacker's statement, "I can't believe you called the police." Raymond testified that a few days before the attack, he had called the police on defendant after the two had an altercation.

Defendant confirmed that the police had come to his home shortly before Raymond was attacked, and told him he was no longer welcome at Raymond's home.

We conclude that from this evidence a rational juror could draw reasonable inferences necessary to conclude beyond a reasonable doubt that defendant was Raymond's attacker. Accordingly, defendant's argument that there was insufficient evidence to support Raymond's identification is without merit.

## B. OFFENSE VARIABLES

Defendant next argues that the trial court erred by assessing 10 points for offense variable (OV) 4 and 50 points for OV 7. Each argument is addressed in turn.

"A trial court's factual determinations under the sentencing guidelines must be supported by a preponderance of the evidence and are reviewed for clear error." *People v Wellman*, 320 Mich App 603, 605; 910 NW2d 304 (2017). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." See *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015) (quotation marks and citation omitted). A preponderance of the evidence is "such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008).

"Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "When calculating the sentencing guidelines, a court may consider all record evidence . . . ." *Wellman*, 320 Mich App at 608 (quotation marks and citation omitted).

## A. OV 4

Defendant first argues that the trial court erred by assessing 10 points for OV 4. OV 4 concerns psychological injury to a victim, and is governed by MCL 777.34, which provides:

(1) Offense variable 4 is psychological injury to a victim. Score offense variable 4 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) Serious psychological injury requiring professional treatment occurred to a victim ................................................................. 10 points

(b) For a conviction under section 50b of the Michigan penal code, 1931 PA 328, MCL 750.50b, serious psychological injury requiring professional treatment occurred to the owner of a companion animal 5 points

(c) No serious psychological injury requiring professional treatment occurred to a victim .......................................................................0 points

(2) Score 10 points if the serious psychological injury may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive.

"[P]oints for OV 4 may not be assessed solely on the basis of a trial court's conclusion that a 'serious psychological injury' would normally occur as a result of the crime perpetrated against the victim." *People v White*, 501 Mich 160, 162; 905 NW2d 228 (2017). And "[w]hile crime victims are often obviously, and understandably, frightened when a crime is being perpetrated, this fear does not necessarily result in a 'serious psychological injury.' " *Id*. at 164-165.

The presentence investigation report (PSIR) in this case indicates that Raymond was unavailable to provide a victim impact statement at the time the PSIR was prepared. The PSIR details that a phone call was placed to Raymond's home, and that Raymond's sister-in-law answered and explained that Raymond was struggling with talking about what had occurred. However, Raymond delivered a victim impact statement in person during defendant's sentencing. Raymond stated that he could not believe defendant had tried to kill him, and that he was struggling with the physical, mental, and psychological misery defendant had put him through. Raymond went on to explain that he woke up every day thinking about what defendant had done to him, and that the "mental and psychological pain" defendant had inflicted is something that he may "never be able to handle." The trial court explored this with Raymond, and the following exchange occurred:

> *The Court*: All right. The Court has one question. You talked about how you have mental and psychological pain that he [defendant] can't imagine.
>
> *Mr. Bardwell*: Yes.
>
> *The Court*: Okay. What—what have you suffered from, as far a psychological injury?
>
> *Mr. Bardwell*: I don't think I've got any psychological injury; it's just that, when I get up every day, it hurts; it just hurts for me to think of what my son did to me, and how, and what I did to make him want to hurt me that bad. I just—it's just unbelievable for me to comprehend.
>
> *The Court*: All right. So, when you wake up in the morning, that's your first thought?
>
> *Mr. Bardwell*: Yeah.

When scoring OV 4, the trial court referred to this exchange, and indicated that it was "of the opinion that the victim very likely might need counseling in the future, and that he is suffering from a psychological injury, even though he doesn't recognize it at this time, and that he may require professional treatment."

We conclude that on the record before us, sufficient evidence was presented to support the trial court's conclusion that the victim suffered a psychological injury that may require

professional treatment. Accordingly, the trial court did not clearly err by assessing defendant 10 points for OV 4.

## B. OV 7

Defendant argues that the trial court erred by assessing 10 points for OV 7 because defendant did not engage in conduct beyond the minimum required to commit the offense. MCL 777.37(1) provides, in full:

(1) Offense variable 7 is aggravated physical abuse. Score offense variable 7 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) A victim was treated with sadism, torture, or excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense …………………………………… 50 points

(b) No victim was treated with sadism, torture, or excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the ……………………………………… 0 points

When scoring OV 7, our Supreme Court has determined that the relevant questions to be considered by the trial court are "(1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Hardy*, 494 Mich at 443-444. "For purposes of OV 7, excessive brutality means savagery or cruelty beyond even the usual brutality of a crime." *People v Rosa*, 322 Mich App 726, 743; 913 NW2d 392 (2018) (quotation marks and citation omitted).

The evidence presented at trial established that defendant broke into Raymond's home in the middle of the night and hit Raymond in the face with a hammer approximately 22 times while Raymond slept. Defendant yelled at Raymond, "I'm going to f****** kill you," and "I can't believe you called the police." Then, acting with the knowledge that Raymond was still alive, defendant went into the basement and turned off all power to Raymond's home so that Raymond could not call for help.

Under these circumstances, we conclude that the trial court did not clearly err by determining that defendant had engaged in conduct beyond the minimum required to commit the instant offenses, and thus assessing 50 points for OV 7.

Affirmed.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Jane E. Markey