*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RAYSHEEN HARRIS, JR.,

Defendant-Appellant.

UNPUBLISHED
March 12, 2025
1:34 PM

No. 368292
Kent Circuit Court
LC No. 22-009149-FC

Before: N. P. HOOD, P.J., and BOONSTRA and FEENEY, JJ.

PER CURIAM.

Defendant appeals by right following his jury trial convictions of involuntary manslaughter, MCL 730.321,[1] operating a vehicle while intoxicated causing death (OUI causing death), MCL 257.625(4), and failure to remain at the scene of an accident when at fault and the accident resulted in death, MCL 257.617(3) (failure to remain). The trial court sentenced defendant to concurrent prison terms of 100 months (8 years and 4 months) to 15 years for each of his convictions. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On July 22, 2022, defendant fatally struck a bicyclist while driving his vehicle on South Division Street in Wyoming. Defendant, who was intoxicated and driving at an excessive rate of speed, drove away from the collision. He was ultimately apprehended in a mobile home park in Kentwood, covered in blood and other organic material from the decedent.

At trial, videos of the collision captured by several nearby surveillance cameras, as well as the mounted camera of a delivery truck, were played for the jury. Witnesses testified that defendant's vehicle had dismembered the decedent. A witness observed defendant on Wilbur Street removing the decedent's severed arm from his truck, then urinating near it before driving away. Farid Karadsheh, the owner of a store on the street where the collision occurred, provided

---

[1] Defendant was acquitted of the greater offense of second-degree murder, MCL 750.317.

his security footage and testified that he had heard the collision and seen the decedent's body. He described South Division Street at the time of the collision as "a busy street" and stated that he had observed "several cars" on the street at the time of the collision. Defendant's blood alcohol level was determined via blood test to be 0.25 grams of alcohol per milliliter of blood. An accident reconstruction specialist reviewed the video footage and evidence from the scene and concluded that defendant's vehicle had been traveling at approximately 85 miles per hour immediately before the collision. The posted speed limit for that area of South Division Street was 40 miles per hour.

Defendant was convicted as described. At sentencing, defense counsel stated that the defense had no objections to the presentence investigation report (PSIR). The trial court, in response to the prosecution's objection, then changed the number of points assessed for Offense Variable (OV) 9 from zero to 25. When asked by the trial court if there was any objection to the final OV score, defense counsel stated "Your Honor, it doesn't change the actual scoring grid, so we have no objections at this time." Defendant's sentencing guidelines range was calculated at 50 to 100 months for the sentencing offense of involuntary manslaughter. Defendant was sentenced, within the guidelines, to a minimum sentence of 100 months for each conviction. This appeal followed. On appeal, defendant does not challenge his convictions, but argues that OVs 5, 9, and 13 were improperly assessed, that his trial counsel provided ineffective assistance by failing to object to those assessments, and that his sentence was disproportionate.

## II.  OFFENSE VARIABLES

Although defendant argues that OVs 5, 9, and 13 were improperly assessed by the trial court, he has waived appellate review of these scores. " 'A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.' " *People v Jackson*, 487 Mich 783, 791; 790 NW2d 340 (2010) (emphasis omitted), quoting MCL 769.34(10). See also MCR 6.429(C). Defendant did not do so. Additionally, "[w]hen defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). The record shows that defense counsel affirmatively stated at sentencing that there were no objections to the PSIR, and no objection to the trial court's assessment of 25 points for OV 9 in response to the prosecution's objection. Accordingly, defendant has waived his right to raise these issues on appeal. See *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000) ("A defendant may not waive objection to an issue before the trial court and then raise it as an error on appeal.") (Quotation marks and citation omitted).

We will therefore only consider these issues in the context of defendant's claim of ineffective assistance of counsel. A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law. *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008). The trial court's factual findings are reviewed for clear error, while we review de novo the constitutional question whether an attorney's ineffective assistance deprived a defendant of his Sixth Amendment right to counsel. *Id*. at 242. Because defendant did not move the trial court for

a new trial or a *Ginther*[2] hearing, or move this Court to remand for a *Ginther* hearing, our review is limited to mistakes apparent on the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). The "effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) "counsel's performance was deficient" and (2) "counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). A defense attorney's performance was deficient if "it fell below an objective standard of professional reasonableness." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Id*. Counsel is not ineffective for failing to raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## A. OV 5

Defendant argues that his counsel was ineffective for failing to object to the trial court's assessment of 15 points for OV 5. We disagree. OV 5 considers "psychological injury to a member of a victim's family," and is assessed at 15 points if "[s]erious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(a). "In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.35(2).

In *People v Calloway*, 500 Mich 180, 186; 895 NW2d 165, 167 (2017), our Supreme Court stated that serious psychological injury is that which has "important or dangerous possible consequences." A trial court's considerations for assessing OV 5 should include "the severity of the injury and the consequences that flow from it, including how the injury has manifested itself before sentencing and is likely to do so in the future, and whether professional treatment has been sought or received." *Id*.

In this case, at sentencing, one of the decedent's daughters spoke of her father's positive qualities, and of defendant's "sickening" behavior. Regarding her personal loss, she stated the following:

> I guess, my biggest thing is, there are moments in our life that [defendant] has taken from us that we will never be able to have. My dad's only grandson graduate[s] in two years, and instead of it being a good moment and a happy moment, it's going to be overshadowed by the fact that he's not here. . . . And it's

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

going to make all those moments for the rest of our lives be overshadowed by the grief, which has really been hard to deal with.

She continued, "[H]e was supposed to grow old and watch his grandkids and his children grow old, and we don't get that anymore. [Defendant] took something that I waited my whole life to have. And it's not okay."

Another of the decedent's daughters offered a statement, including that defendant had deprived her of the best time of her adult life, that for four months she was close with him when defendant "ruined it." That daughter continued that her father told her, on the day that he was killed, "to stay positive, focused, and optimistic," but that now she "can't do that."

A preponderance of the evidence supported the trial court's assessment of 15 points for OV 5. See *Calloway*, 500 Mich at 188-189 (holding that a score of 15 points for OV 5 was justified by statements from the victim's family members of such negative feelings as "having a very hard time dealing with this situation," the "family feels horrible," and a "tremendous, traumatic effect" that would "change them for the rest of their lives"); *People v Wellman*, 320 Mich App 603, 609; 910 NW2d 304 (2017) (noting that a finding of serious psychological injury may be supported by comments of "feeling angry, hurt, violated, and frightened"); *People v Baskerville*, 333 Mich App 276, 292-293; 963 NW2d 620 (2020) (upholding the assessment of 15 points for OV 5 in light of a victim's family member's impact statement "expressing her anger, grief, and despair," specifying "liv[ing] an unfamiliar life," difficulty sleeping because of nightmares, reduced social and work activities, feelings of sadness and depression, anxiety when near the area where the loss took place, and needing medication). According, defense counsel was not ineffective for failing to raise a futile objection. *Ericksen*, 288 Mich App at 201.

## B. OV 9

Defendant also argues that his counsel was ineffective for failing to object to the trial court's assessment of 25 points for OV 9. We disagree. Twenty-five points must be scored for OV 9 when "[t]here were 10 or more victims who were placed in danger of physical injury or death, or 20 or more victims who were placed in danger of property loss." MCL 777.39(1)(b). The sentencing court must "count each person who was placed in danger of physical injury or loss of life or property as a victim." MCL 777.39(2)(a).

OV 9 is scored based on a defendant's "conduct during" the sentencing offense. *People v McGraw*, 484 Mich 120, 133-134; 771 NW2d 655 (2009). "Scoring OV 9 for multiple victims may . . . be appropriate if there were other individuals present" at the scene of a crime "who were placed in danger of injury or loss of life." *McGraw*, 484 Mich at 129. For purposes of OV 9, an individual who was in proximity to a physically threatening situation may be counted as a victim. *People v Rodriguez*, 327 Mich App 573, 582; 935 NW2d 51 (2019); see also *People v Kimble*, 252 Mich App 269, 274; 651 NW2d 798 (2002).

In this case, because there was no objection, the trial court did not articulate the rationale for its score of OV 9. The prosecution argues that video recorded from the delivery truck showed that defendant drove erratically, while intoxicated, passed 16 vehicles at a high rate of speed. While the video was not provided to this Court, we conclude that defendant has not met his burden

of showing a reasonable probability that the score for OV 9 would have been different if his counsel had objected. The trial record shows that the prosecution and the driver of the delivery truck both referred to defendant passing not only the truck (which contained the driver and the passenger) but other vehicles before striking the decedent. In his opening statement, defense counsel referred to South Division as "a very busy road." The testimony of witnesses indicates that there were numerous open businesses near the area of the accident. Karadsheh specifically described Division Street as "busy" and stated that there were "several cars" in the video of the accident. Accordingly, although we are unable to verify the prosecution's specific claim that 16 vehicles (and therefore at least 16 people, assuming none of the cars were automated and without human passengers) were placed at risk by defendant's conduct that led to his involuntary manslaughter conviction, defendant has not shown that there was a scoring error. *McGraw*, 484 Mich at 133-134.

## C. OV 13

Defendant also argues that his counsel was ineffective for failing to object to the trial court's assessment of 25 points for OV 13. We disagree. MCL 777.43(1)(c) provides that 25 points be assessed when "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." The crimes considered in assessing OV 13 include "all crimes within a 5-year period, including the sentencing offense, . . . regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a).

It is undisputed that defendant was convicted of three felonies that are crimes against a person: involuntary manslaughter, operating while intoxicated causing death, and failure to stop at scene of accident when at fault resulting in death. It is also undisputed that defendant had no other felony convictions during the 5-year period including the sentencing offense.

In *People v Carll*, 322 Mich App 690, 704; 915 NW2d 387 (2018), this Court stated that "a single felonious act cannot constitute a pattern" suitable to score OV 13. Defendant argues that his convictions are all based on his collision with the decedent, and are therefore a single felonious act. We disagree. Defendant's involuntary manslaughter conviction was based on his commission of a homicide while operating his vehicle in a grossly negligent manner, such as traveling over 80 miles per hour in a 40 mile per hour zone and passing other vehicles in a reckless and unsafe manner. Defendant's OUI causing death conviction was based on his operation of his vehicle while intoxicated and causing death by that operation. And defendant's failure to remain conviction was based on his flight from the scene of the accident after killing the decedent. Accordingly, defendant's convictions were based on distinct felonious actions. The record therefore supported the trial court's assessment of 25 points for OV 13, and any objection by defense counsel would have been futile. *Ericksen*, 288 Mich App at 201.

## III. PROPORTIONALITY

Defendant also argues that his sentences were disproportionate and therefore unreasonable. We disagree. We review a trial court's sentences for an abuse of discretion. See *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). An abuse of discretion occurs when the sentence imposed does not reasonably reflect the seriousness of the circumstances surrounding the offense and the offender. *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017),

citing *Milbourn*, 435 Mich at 636. A sentence within the guidelines range raises a rebuttable presumption of proportionality. *People v Posey*, 512 Mich 317, 359; 1 NW3d 101 (2023). It is a defendant's burden to demonstrate that "a within-guidelines sentence is unreasonable or disproportionate." *Id*.

The reasonableness of a sentence is determined by evaluating whether " 'that sentence violate[d] the principle of proportionality, which require[s] sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse*, 500 Mich at 474, quoting *Milbourn*, 435 Mich at 636. This Court has stated several nonexclusive factors bearing on the proportionality of a sentence that a trial court may consider:

> (1) the seriousness of the offense, (2) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation, and (3) factors that were inadequately considered by the guidelines in a particular case. [*People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (citations omitted).]

A trial court should also take into account " 'the nature of the offense and the background of the offender.' " *Id*. at 45, quoting *Milbourn*, 435 Mich at 651.

In this case, the trial court explained its sentence as follows:

> The Court finds that a sentence of 100 months, at the top of the guidelines, is a fair and just sentence under the totality of these circumstances. Again, the defendant was driving 85 miles per hour in a 40 mile per hour zone at three times the legal limit. The defendant's conduct was egregious, and as one of the victim representatives indicates, his conduct was horrible. I believe it was horrible. It was horrible conduct.
>
> But we don't just look at the conduct. We also look at the person. I think that despite [defendant's] conduct, . . . he acted horrific[ally] on the date of the accident, but I don't think he's a horrific person. He has a minimal criminal record. He does not have a prior drunk driving conviction. At the time of the accident, he was raising his children . . . had full-time employment. He was a productive member of society back then, and he . . . can be again. Therefore, that is the basis of the Court's sentence.

The trial court also noted the large disparity in the minimum sentences for second-degree murder and involuntary manslaughter, and noted three other recent cases with similar facts and outcomes, and noted that the decedent's family was disappointed that defendant had not been convicted of murder.

Defendant's argument is premised on his position that OVs 5, 9, and 13 were scored in error, resulting in an inaccurately high total OV score. However, nothing in the record indicates

that the trial court considered the total points assessed to defendant for offense variables in rendering its sentence. Further, as discussed, the trial court's scoring of those OVs was supported by the record.

Defendant also suggests that his sentence was unreasonable because this case resulted in his first felony convictions. We disagree. The trial court explicitly credited defendant at sentencing for having no previous felony convictions, which was accounted for in assessing the sentencing variables; yet the trial court concluded that the extreme nature of defendant's crime warranted a higher sentence. The trial court characterized defendant's conduct as "horrible," and stated its belief that the seriousness of the offense was difficult to overstate. The trial court noted that defendant had been traveling at more than double the speed limit while his blood alcohol level was more than three times the legal limit at the time of the accident. The trial court also highlighted defendant's "egregious" conduct, such as discarding the decedent's dismembered arm from his vehicle, urinating near it in the street, and fleeing the scene covered in the decedent's blood and biological material.

We therefore conclude that the trial court sufficiently established that its sentence was " 'proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse*, 500 Mich at 474, quoting *Milbourn*, 435 Mich at 636. For these reasons, defendant has not shown that his sentence was unreasonable or disproportionate to the circumstances of the offense and offender.

Affirmed.


/s/ Noah P. Hood
/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney