*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 18, 2024

Plaintiff-Appellee,

v

No. 362695
Wayne Circuit Court
LC No. 20-001587-01-FC

JIMMIE CARD,

Defendant-Appellant.

Before: LETICA, P.J., AND MURRAY AND PATEL, JJ.

PER CURIAM.

Defendant, Jimmie Card, appeals as of right his judgment of sentence resulting from his jury trial conviction of second-degree murder, MCL 750.317; assault with intent to do great bodily harm less than murder, MCL 750.84(1)(a); discharging a firearm in a building causing death, MCL 750.234b(5); discharging a firearm in or at a building causing injury, MCL 750.234b(3); possession of a firearm by a felon, MCL 750.224f; and six counts of felony-firearm, MCL 750.227b(1). We affirm.

## I. STATEMENT OF FACTS

This case arose from a January 31, 2020 incident when officers arrived at a home on Braile Street, entered the premises and observed one victim, Sheila Hall, in a pool of blood, and a second victim, Jonathan Thomas, shot in the shoulder. Hall would be declared deceased from a gunshot wound. Thomas opined that defendant came to the premises looking for Hall. According to Thomas, he was in the basement stairwell of the premises when he first noticed defendant holding a revolver. Thomas reported that a physical altercation ensued between the men for control of the revolver, leading to defendant shooting Thomas once in the left shoulder. Thomas further reported that he heard two more shots fired, one of which fatally wounded the victim.

Because defendant was charged as a serious violent fourth-offense habitual offender or subsequent offender, MCL 769.12(1)(a), a minimum 25-year sentence was required as to the murder and assault convictions. At sentencing, the court determined that defendant's minimum recommended sentencing guidelines' range was 365 to 600 months or life for the second-degree murder conviction. The court sentenced defendant to 30 to 60 years' incarceration for second-

degree murder, 25 to 50 years for assault with intent to do great bodily harm less than murder; 5 to 15 years for discharging a firearm in or at a building causing death or injury; 1 to 5 years for possession of a firearm by a felon to be served consecutively to mandatory two-year sentences for the felony-firearm convictions, but concurrently with the sixth felony-firearm conviction.

## II. VAGUENESS AS APPLIED TO DEFENDANT'S CASE

Defendant first argues that MCL 777.35, which governs Offense Variable (OV) 5, is unconstitutionally vague as applied to the facts of his case because MCL 777.35 gives the sentencing court unlimited discretion. Defendant argues that the statute's language permits the trial court to subjectively evaluate whether a serious psychological injury requiring professional treatment has occurred to a member of the victim's family. Defendant argues that the requirements for OV-5 are very easy to satisfy in any case involving an assault.

Defendant did not establish that the statute is unconstitutional as applied to him because the evidence presented at sentencing correctly showed that the victim's family was seeking psychological treatment. Thus, the sentencing court did not commit plain error.

Defendant did not challenge the constitutionality of MCL 777.35 in the trial court. The issue is therefore unpreserved. *People v Sands*, 261 Mich App 158, 160; 680 NW2d 500 (2004). An unpreserved argument that a statute is unconstitutional is reviewed for plain error affecting defendant's substantial rights. *Sands*, 261 Mich App at 160. To avoid forfeiture under the plain error rule, defendant must show that: (1) an error occurred, (2) the error was plain or obvious, and (3) the plain error affected defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). This Court reviews de novo whether a statute is constitutional. *STC*, *Inc v Dep't of Treasury*, 257 Mich App 528, 538-539; 669 NW2d 594 (2003).

Statutes are presumed to be constitutional, and are construed to be constitutional if at all possible. *Judicial Attorneys Ass'n v State*, 459 Mich 291, 303; 586 NW2d 894 (1998); *People v Deroche*, 299 Mich App 301, 305; 829 NW2d 891 (2013). Defendant, as the party challenging the constitutionality of MCL 777.35, has the burden to establish the statute's invalidity. *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009).

An as applied challenge to the constitutionality of a statute " 'considers the specific application of a facially valid law to individual facts.' " *Promote the Vote v Secretary of State*, 333 Mich App 93, 117; 958 NW2d 861 (2020), quoting *In re Request for Advisory Opinion*, 479 Mich 1, 11 n 20; 740 NW2d 444 (2007). A statute is void for vagueness if " '(1) it is overbroad and impinges on First Amendment freedoms, (2) it does not provide fair notice of the conduct it regulates, or (3) it gives the trier of fact unstructured and unlimited discretion in determining whether the statute has been violated.' " *Kenefick v City of Battle Creek*, 284 Mich App 653, 655; 774 NW2d 925 (2009), quoting *Proctor v White Lake Twp Police Dep't*, 248 Mich App 457, 476; 639 NW2d 332 (2001). As explained by this Court in *People v Hrlic*, 277 Mich App 260, 263; 744 NW2d 221 (2007):

> To evaluate a vagueness challenge, this Court must examine the entire text of the statute and give the words of the statute their ordinary meaning. To afford proper

notice of the conduct proscribed, a statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. A term that requires persons of ordinary intelligence to speculate about its meaning and differ on its application may not be used. To be sufficiently definite, the meaning of a term must be fairly ascertainable by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words. [Quotations marks and citations omitted.]

As stated above, defendant argues that MCL 777.35 is unconstitutionally vague under the third scenario (i.e., unlimited discretion).

Our Supreme Court has determined that Michigan's sentencing guidelines are advisory only. *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015). Although the guidelines are not mandatory, a trial court must still consider them during sentencing. *Id.* MCL 777.35 states in full:

> (1) Offense Variable 5 is psychological injury to a member of a victim's family. Score offense variable 5 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points.
>
> (a) Serious psychological injury requiring professional treatment occurred to a victim's family…………………………… 15 points
>
> (b) No serious psychological injury requiring professional treatment occurred to a victim's family…………………. 0 points
>
> (2) Score 15 points if the serious psychological injury to the victim's family may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive.

The phrase "serious injury" is defined as "having important or dangerous possible consequences." *Merriam-Webster*'s *Collegiate Dictionary* (5th ed). The word "psychological" is defined as related to the mental state and/or mind. *Id.* Finally, "professional treatment" is defined as "the action or management and care to prevent, cure or slow progression of a medical condition." *Id.*

Since MCL 777.35(1) is a "general" provision and subsection two is a "specific provision," subsection two controls. *People v Calloway*, 500 Mich 180, 185-186; 895 NW2d 165 (2017). Thus, 15 points may be assessed by a trial court under OV 5 if a victim's family member has suffered a serious psychological injury that "may require professional treatment in the future," even though the family member has no present intent to seek treatment. *Id.* "[E]ven when professional treatment has not yet been sought or received, points are properly assessed for OV 5 when a victim's family member has suffered a serious psychological injury that may require professional treatment in the future." *Id.* at 186. When scoring OV 5, a trial court is required to consider the context of what makes the injury "serious." For example, a trial court ought to consider "the severity of the injury and the consequences that flow from it." *Id.* Although MCL

-3-

777.35(1)(a)-(b) and (2) could appear to be inconsistent, our Supreme Court has held that subsection two of MCL 777.35 further explains the circumstances where a 15-point score is warranted. *Calloway*, 500 Mich at 185. Thus, MCL 777.35(1)(a) requires that OV 5 be assessed 15 points when "[s]erious psychological injury requiring professional treatment occurred to a victim's family." But zero points are scored if there is not any serious psychological injury requiring professional treatment. MCL 777.35(1)(b). In addition, MCL 777.35(2) requires that OV 5 be assessed 15 points if the serious psychological injury may require professional treatment.

Defendant cites *Grayned v City of Rockford*, 408 US 104; 92 S Ct 2294; 33 L Ed 2d 222 (1972), for the proposition that MCL 777.35 creates an easy threshold for a trial court to assess 15 points for OV 5, because the statutory language allows a trial court to subjectively determine whether serious psychological injury requiring professional treatment to a victim's family member has occurred. Defendant does not explain why MCL 777.35 is not sufficiently definite. However, the statute as written and interpreted precludes a finding of vagueness as applied to defendant.

Contrary to defendant's argument, MCL 777.35(2) does not give the trial court "unbridled discretion" in determining whether the victim's family may seek psychological treatment in the future. *Kenefick*, 284 Mich App at 657. The statute contains readily understood terms that need little explanation or definition to apply. Moreover, the terms are definite enough to provide guidance to the trial court in deciding whether to assess 15 points for OV 5, and caselaw has adequately provided additional guidance on the meaning of OV 5. As discussed below, the trial court correctly utilized statements made at the sentencing hearing to conclude that the victim's family members suffered serious psychological injuries that may require future treatment.

Applying the language of MCL 777.35 to defendant's case, the prosecution indicated at the sentencing hearing that the victim's daughter was seeking treatment over the loss of her mother. In addition, Crystal Hall, the victim's sister, appeared at the sentencing hearing and read a victim impact statement that established how the victim's family members have suffered serious psychological injuries that may require professional treatment in the future. *Calloway*, 500 Mich at 186. Specifically, in her victim impact statement, Hall discussed the difficulty her niece, the victim's daughter, has had in dealing with the loss of the victim. Talking about the loss of the victim, Hall stated, "[i]t's a light passed on that I don't even know if I can get it back." Further, when discussing how the family has been coping with the victim's death, Hall stated, "[n]ow we all have to get counseling because we don't know about ourselves. We can't explain it right without projecting our anger."

Defendant's contention that MCL 777.35 is unconstitutional as applied to this case has no merit since the evidence showed that the victim's daughter was seeking professional treatment for her psychological injury. Hall's victim impact statement was sufficient to demonstrate to the sentencing court that serious psychological injury had occurred to the victim's family. In any event, because the terms of OV 5 are easily understood and defined, and because the evidence of serious psychological injury was undisputed, defendant's constitutional challenge does not survive plain error review because no error occurred, and the purported error did not affect defendant's substantial rights.

### III. 25-POINT SCORE FOR OV 13

Defendant next argues that the sentencing court should not have assessed 25 points for OV 13 because defendant's actions in entering the home on Braile Street and discharging three shots from a revolver were one felonious event and cannot constitute a pattern of felonious criminal activity, citing *People v Carll*, 322 Mich App 690, 704-706; 915 NW2d 387 (2018).

We review de novo whether the trial court properly interpreted the sentencing guidelines. *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009); *People v Johnson*, 298 Mich App 128, 130; 826 NW2d 170 (2012). De novo review is independent review without any deference given to the trial court. *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018); *People v Barrera*, 451 Mich 261, 268; 547 NW2d 280 (1996). As well, we review de novo issues concerning the interpretation of any sentencing variables. *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016).

A trial court's findings in scoring the guidelines "are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Lowrey*, 342 Mich App 99, 120; 993 NW2d 62 (2022) (quotation marks and citation omitted). "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Barnes*, 332 Mich App 494, 499; 957 NW2d 62 (2020) (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Lowrey*, 342 Mich App at 120 (quotation marks and citation omitted).

When scoring OVs, a court is able to entertain any and all evidence from the record, such as testimony presented at a preliminary examination or trial. *Johnson*, 298 Mich App at 131. Under MCL 777.43(1)(c), the sentencing court assessed 25 points for OV 13, for a "continuing pattern of criminal behavior" when "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." When considering which crimes fall within the sentencing guidelines for OV 13, a trial court should include "all crimes within a 5-year period, including the sentencing offense . . . regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). For the sentencing offense to constitute a part of the pattern, "it must be encompassed by the same five-year period as the other crimes constituting the pattern." *People v Francisco*, 474 Mich 82, 87; 711 NW2d 44 (2006). MCL 777.43(1)(g) directs a sentencing court to assess zero points for OV 13 when a defendant did not engage in the necessary pattern of criminal behavior. *People v Bonilla-Machado*, 489 Mich 412, 427; 803 NW2d 217 (2011).

In *Carll,* the defendant appealed his convictions for one count of reckless driving causing death under MCL 257.626(4), and three counts of reckless driving causing serious impairment of a bodily function under MCL 257.626(3). *Carll*, 322 Mich App at 693. The defendant had driven through a stop sign, crashed into another vehicle, and killed the other vehicle's driver, seriously injured the other vehicle's passenger, and seriously injured two passengers in his vehicle. *Id*. at 694-694. This Court defined a "continuing pattern of criminal activity" as "more than one felonious event." *Id*. at 704-705. This Court held that the trial court improperly assessed OV 13 at 25 points, reasoning that the record showed separate acts committed by a defendant in a single event, because the defendant's "reckless driving constitute[d] a single act[.]" *Id.* at 705-706.

However, the present case does not present the circumstances evidenced in *Carll*, since the sentencing offenses constitute more than one felonious event and are to be counted separately for determining whether there was a pattern of felonious criminal activity. Here, the jury convicted defendant of second- degree murder, MCL 750.317; assault with intent to do great bodily harm less than murder, MCL 750.84(1)(a); and discharging a firearm in a building causing death and causing injury, MCL 750.234b(3) and (5). Three of the four crimes are statutorily defined as "crimes against a person." See MCL 777.16d, MCL 777.16m, and MCL 777.16p. When defendant entered the Braile Street home with a revolver, struggled with Thomas for control of the revolver, and fired three shots within the residence that struck the victims, these actions constituted a pattern of criminal activity within the meaning of MCL 777.43. Each of these acts resulted in a different felony charge that was within the five-year period described by MCL 777.43. Thus, the trial court did not err in assessing 25 points for OV 13 because defendant's convictions for crimes against a person constituted a pattern of criminal activity.[1]

## IV. 15 POINTS ASSESSED FOR OV 5

Defendant next argues that the sentencing court should not have assessed 15 points for OV 5 because there was insufficient evidence to prove that the victim's family suffered a serious psychological injury requiring professional treatment. In addition, defendant argues that the record evidence included the testimony of one family member but lacked a written impact statement from the purported victim. In defendant's view, the testimony of one family member alone was insufficient to establish a serious psychological injury.

We review de novo whether the trial court properly interpreted the sentencing guidelines. *McGraw*, 484 Mich at 123; *Johnson*, 298 Mich App at 130. De novo review is independent review without any deference given to the trial court. *Bruner*, 501 Mich at 226. Again, we review de novo issues concerning the interpretation of any sentencing variables, *Sours*, 315 Mich App at 348, and for clear error any factual findings by the trial court, *Lowrey*, 342 Mich App at 120.

The sentencing court assessed 15 points for OV 5 since the court found that the victim's family members suffered serious psychological injury that required professional treatment. When scoring OVs, a court may entertain any and all evidence from the record, such as testimony

---

[1] And, even if the shooting inside the residence that resulted in Hall's death and the second-degree murder conviction were treated as arising from a single act, defendant would not be entitled to sentencing relief for two reasons. First, the record reveals that well within the five-year timeframe, defendant assaulted and stalked Hall, including threatening to kill her, and that defendant also assaulted another woman he had previously dated. Because no conviction is required to assess points under OV 13, MCL 777.43(2)(a), defendant's prior acts constituting domestic violence, third, MCL 750.81(5), and aggravated stalking, MCL 750.411i(2)(c) and (3)(a), could be properly considered as additional felonious crimes against a person. See MCL 777.16d and MCL 777.16t. Second, any error in scoring OV 13 would not require resentencing because it would not alter defendant's appropriate sentencing guidelines' range. See *Francisco*, 474 Mich at 89 n 8 ("Where a scoring error does not alter the appropriate guidelines range, resentencing is not required.").

presented at a preliminary examination or trial, and apply the evidence to make a sentencing decision. *Johnson*, 298 Mich App at 131. A victim's impact statement or testimony that includes statements of anger, fright, or feelings of being violated supports assessing 15 points for OV 5. *People v Wellman*, 320 Mich App 603, 609; 910 NW2d 304 (2017); *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012). As our Supreme Court has reasoned in upholding the trial court's decision to assess 15 points for OV 5, MCL 777.35 does not require that a victim's family member to be presently seeking or receiving professional treatment or intending to do so. *Calloway*, 500 Mich at 186. See also *People v Baskerville*, 333 Mich App 276, 292-294; 963 NW2d 620 (2020) (upholding a 15-point assessment under OV 5, where the victim's sister expressed her anger and grief, need for medication to sleep, nightmares, and daily sadness and pain.)

We are persuaded that both *Calloway* and *Baskerville* support the assessment of 15 points for OV 5. In *Calloway*, the victim's stepfather testified that his family felt horrible since the incident. *Calloway*, 500 Mich at 188-189. In addition, he stated that, "I want you to feel my pain, your Honor . . . [b]ecause something happened that was final, we can't change it." After reviewing this evidence, the court found sufficient evidence of the seriousness of the injuries and their long-lasting effect on the victims. *Id.* at 189.

At sentencing in this case, the victim's daughter had already sought counseling for the trauma she had experienced. In addition, the statements made by Hall are similar to the statements made by the victims in *Calloway* and *Baskerville*, because the statements evidence the pain and anger felt after the loss of a loved one. In her statement, Hall depicted a resilient family dealing with indelible loss. She discussed how every member of their family is hurting differently and how the victim's child asks, "[w]hen is Mommy coming home?" and "if Auntie Pam is sad today?" Hall indicated that the incident had caused her to no longer attend church or partake in other daily activities because of the anger she feels. At the end of her statement, Ms. Hall discussed how troubled she was that this incident took place and how "[i]t's not okay for a little girl to not have her mom."

Based on this evidence, the trial court did not err in assessing 15 points for OV 5 because the record showed that the victim's daughter had already sought treatment, and the statements made by the victim's family expressing their anger and heartbreak are sufficient to support the assessment of 15 points for OV 5. See *Calloway*, 500 Mich at 188-189; People *v Baskerville*, 333 Mich App at 292-294.

## V. DEFENDANT'S SUPPLEMENTAL BRIEF

After oral argument defendant was afforded the opportunity to file a supplemental brief on appeal after the remaining trial transcripts were filed. Defendant did so, and though the prosecution was provided an opportunity to respond, it declined to do so. In his supplemental brief, defendant argues that the trial court erred in refusing to provide the jury with the missing witness instruction, M Crim JI 5.12. We review this preserved issue for an abuse of discretion. *People v Steele*, 283 Mich App 472, 485; 769 NW2d 256 (2009).

The relevant part of the res gestae witness statute, MCL 767.40a(5), provides as follows:

The prosecuting attorney or investigative law enforcement agency shall provide to the defendant, or defense counsel, upon request, reasonable assistance, including investigative assistance, as may be necessary to locate and serve process upon a witness. The request for assistance shall be made in writing by defendant or defense counsel not less than 10 days before the trial of the case or at such other time as the court directs. If the prosecuting attorney objects to a request by the defendant on the grounds that it is unreasonable, the prosecuting attorney shall file a pretrial motion before the court to hold a hearing to determine the reasonableness of the request.

The prosecution's duty under the statute is in part to provide reasonable assistance to locate witnesses on a defendant's request. *People v Burwick*, 450 Mich 281, 289; 537 NW2d 813 (1995); *People v Long*, 246 Mich App 582, 585-586; 633 NW2d 843 (2001).

The two endorsed witnesses who could not be located for trial were Keithan Blue and Anthony Hicks. In a written opinion the trial court found that the prosecution met its obligation under MCL 767.40a(5), and thus there was no need to provide the missing witness instruction. The trial court did not err in that regard, as the evidence supported its conclusions. For example, at the due diligence hearing, Detective Flanders testified that as to both witnesses he located last known phone numbers and addresses that they provided when giving earlier witness statements, and attempted to contact the witnesses at each of those numbers and locations. He also searched a database containing the most recent contact information available to police. With respect to Blue specifically, the detective also spoke with Blue's father and grandmother about Blue's whereabouts, but neither provided any additional information that led to getting ahold of Blue. As for Hicks, the detective testified that each address and phone number was a dead-end, and although he left a message with Hicks's sister, she never returned the detective's call.

The trial court did not abuse its discretion in concluding that the prosecution established reasonable efforts to locate these witnesses. Defendant's argument, that the detective should have also sent text messages to the phones and searched social media for their locations, does not alter our conclusion. See *People v Eccles*, 260 Mich App 379, 391; 677 NW2d 76 (2004) (due diligence requires the prosecution to "do everything reasonable, not everything possible, to obtain the presence of a witness."). Because the prosecution met its burden, defendant was not entitled to the missing witness instruction.

Affirmed.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel